BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1911.

(Continued from Volume 239)

## THE STATE v. ERNEST JAEGER, Appellant.

### Division Two, February 6, 1912.

1. **INFORMATION: Verification: Several Counts.** A single
verification of an information in four counts, in three of which
defendant is charged with a violation of the Local Option Law,
and in the fourth with a violation of the Dramshop Act, is suffi-
cient. The counts are not so inconsistent and contradictory as
to render the one verification no verification in fact.

2. **VENUE: Violation of Local Option Law: No Proof.** Where
the only proof of the venue was that one witness bought wine
from the defendant, on the day named, in Newton county, and
paid for it, and the information alleged and the proof showed
that local option was in force in Newton county outside of
Neosho, a city of over 2500 inhabitants, and the State failed to
prove, even inferentially, whether the sale was made within or
without the operation of the law, there was no proof of venue
made, and the judgment of conviction cannot stand.

3. **LOCAL OPTION LAW: Adoption in County: City of 2500
Inhabitants Shown by Census After Order Made.** The Local
Option Law means that the county court shall ascertain before
making an order of election for its adoption by the county
whether any city in the county has on that date 2500 inhabitants

or over, and if so it must be excluded. If it designates what cities are excluded, and declares no other has that number of inhabitants, a city embraced within the territorial operation of the order cannot, before the day of the election, by taking a census showing it has over 2500 inhabitants, exempt itself from the operation of the law if adopted; nor will the adoption of the law be invalid, either as to it or the rest of the territory embraced within the court's order. The law applies to all cities which on the date the order for the election is made do not have 2500 inhabitants. [Overruling State ex rel. v. Mitchell, 115 S. W. 1098, never officially reported, and State ex rel. v. Cass County Court, 137 Mo. App. 698.]

Appeal from Newton Circuit Court.—*Hon. Argus Cox,* Judge.

REVERSED AND REMANDED.

*M. E. Benton* and *John T. Sturgis* for appellant.

(1) The evidence in this case clearly shows that the city of Granby had a population of over 2500 at the time of holding the local option election for Newton county, and yet that city was included and voted on the question along with the county. This would render the election void. State v. Webb, 49 Mo. App. 407; State ex rel. v. Cass County Court, 137 Mo. App. 698; State ex rel. v. Mitchell, 115 S. W. 1098. Whatever may have been the population of Granby according to the United States census in 1900, the census taken by the city in 1904 and on file with the county clerk at the time the local option election was held, showed it to have a population of over 2500. Where the record of an inferior court shows a positive finding of a jurisdictional fact, such finding is conclusive, but if the court acts on the supposition that such fact exists, but leaving its record silent as to any finding, then there is only prima facie evidence of the existence of such fact which is open to rebuttal. State v. McCord, 124 Mo. App. 67. (2) The State did not prove the venue of the alleged sale. The evidence

goes no further than to prove that the sale was within Newton county, and wholly fails to show that it was outside the limits of the city of Neosho. The venue of the offense is within the county and without the city, and it is just as essential to prove that the sale was outside the limits of the city as inside the county. State v. Prather, 41 Mo. App. 451. It is elementary law that a failure to prove the venue is fatal to the prosecution. State v. Hottle, 104 Mo. App. 34; State v. King, 111 Mo. 576; State v. Schuerman, 70 Mo. App. 518; State v. Hartnett, 75 Mo. 251. (3) The information in this case is bad. It contains two inconsistent and repugnant counts; the one for selling intoxicants in violation of the Local Option Law, and the other in violation of the dramshop law. Both laws cannot be in force at the same time in the same county. The proof of the one offense necessarily disproves of the other, and in fact the proof of one is a defense to the other. State v. Beam, 51 Mo. App. 368; Ex parte Handler, 176 Mo. 383; Butler v. State, 25 Fla. 347; State v. Weyland, 105 S. W. 660. The information in this case is bad and will not support a conviction for the reason that it contains inconsistent and absolutely contradictory counts with one verification only, which amounts to no verification. State v. Weyland, 126 Mo. App. 723; State v. Graves, 135 Mo. App. 171.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

Appellant complains that Granby contained more than 2500 inhabitants, as shown by the census filed on June 4, 1904, and was not entitled to participate in said local option election, notwithstanding that on May 2d the county court found that Neosho was the only city in said county containing more than 2500 inhabitants. Section 7238, R. S. 1909, specifically provides

that the county court is to determine upon the petition filed (at the date of said filing) what cities contain a population of 2500 inhabitants, and this fact is jurisdictional, and Sec. 7243, R. S. 1909, providing a penalty for the violation of the said Local Opinion Law, provides: "It shall not be lawful for any person within the limits of said county (trying outside the corporate limits of any city or town having at the date of such order of election a population of 2500 inhabitants or more), or city, as the case may be, etc. The presentation on May 2, 1904, to the county court of Newton county of a petition for a local option election, gave the court jurisdiction of the subject-matter. State v. Mc-Cord, 207 Mo. 519; Baubie v. Ossman, 42 Mo. 505; State ex rel. v. Wilson, 216 Mo. 215; Halter v. Leonard, 223 Mo. 286. The county court having acquired jurisdiction of the subject-matter, the validity of its proceedings is not subject to collateral attack, and when jurisdiction is lawfully adjudged, the court may proceed to final judgment. It cannot be ousted by subsequent events or facts arising in the case, unless some constitutional statutory provision operates to divest the court of its jurisdiction. 11 Cyc. 690; Shea v. Shea, 154 Mo. 599; Seibel v. Simeon, 62 Mo. 255. The lawmaking power of the commonwealth has, in its wisdom, placed the jurisdiction, as provided in Sec. 7238, R. S. 1909, in the county courts of the various counties of the State, and gave that court, alone, exclusive jurisdiction in that behalf, and their acts, as well as the local option election provided by their acts, is not subject to collateral attack. Ryan v. Wooten, 139 Mo. App. 231. The census of Granby, taken and certified to the county clerk, did not add to or detract from, or in any way effect the jurisdiction of the county court in its finding that Neosho was the only town of over 2500 inhabitants, and ordering the local option election in all parts of Newton county outside the corporate limits of said city.

State v. Jaeger.

BROWN, J.—This is a prosecution for selling intoxicating liquors in Newton county, in violation of the Local Option Law alleged to be in force in that county.

The defendant was tried in October, 1907, in the circut court of Newton county, and from a judgment imposing a fine of three hundred dollars, appealed to the St. Louis Court of Appeals. The St. Louis Court of Appeals affirmed the judgment of the trial court on November 16, 1909, but subsequently sustained a motion for a rehearing, and then transferred the appeal to the Springfield Court of Appeals.

Said last named court of appeals heard said appeal and on June 11, 1911, the Hon. Edgar P. Mann, acting as a special judge of said court, filed therein the following opinion:

"Appellant's first contention is that since he was charged in three counts of the information, with a violation of the Local Option Law, and in the fourth count thereof with a violation of the Dramshop Act, all under one verification, the counts are so inconsistent and contradictory that the verification amounts to no verification in fact, and that his motion in arrest, upon the authority of State v. Weyland, 126 Mo. App. 723, should have been sustained.

"In the Weyland case there were three counts in the information under one verification. The first count charged that defendant was a dramshop-keeper, and that he sold liquor on Sunday. Another count charged that he sold liquor on Sunday, saying nothing about his being a dramshop-keeper. The other count charged that he was not a dramshop-keeper, and that he sold liquor on Sunday. The court held that the two counts, expressly charging in the one that defendant was a dramshop-keeper and in the other that he was not a dramshop-keeper, were so flatly contradictory of each other that the truth of both could not consistently be verified under one general affidavit. It did not hold

that the remaining count was improperly verified with either ,of the others under one oath. If it had so held the case would have been in point here, or had the prosecuting attorney charged in one count of the information under consideration that the Local Option Law was in force in Newton county, and in either of -the others that it was not in force in such county, the case cited would have been in point. As the case stands, we find no such contradiction in the counts of this information as renders their verification under one oath inconsistent.

"Appellant's contention that no proof of venue was offered or made by the State is correct. Only one witness testified to the sale, and he merely said that he bought wine on the day named of the defendant, in Newton county, Missouri, and paid for it.

"The information alleges, and the proof shows, that local option was in force in Newton county outside of the city of Neosho, which had a population of over twenty-five hundred. The State entirely failed to prove, even inferentially, whether the sale was made within or without the limits of the operation of the law, and for this failure alone the cause must be reversed and remanded for a new trial.

"Appellant further contends, however, that the undisputed record in this cause discloses affirmatively the fact that the Local Option Law was never adopted in any part of Newton county, and therefore he cannot be convicted of its violation. It is necessary to dispose of that question here and now. Touching appellant's contention in this behalf, it is not necessary to go into every detail further than to say that at the trial the State offered no proof of the publication of the notice of the local option election, but it did offer the record evidence, unchallenged as to its sufficiency or competency, to show that on May 2, 1904, a proper petition was filed with the county court for the election, and that on said May 2, by record entry, the

court made all the necessary findings, including a proper finding that Neosho alone was the only city *on that date* in the county having a population of over twenty-five hundred, and ordered an election for all that part of the county outside the corporate limits of said city to be held June 8, 1904; that the election was held in conformity with the order, returns properly cast up by the county court, showing that all of the county outside of the corporate limits of Neosho, including the fourth class city of Granby, had participated in said election, and that local option had carried by a majority of one hundred and forty-six votes, and showing due publication of the result thereof. In fact, appellant admits that local option was, or would have been lawfully adopted in said county on said June 8, 1904, but for the further following facts shown by the defendant by competent evidence at the trial. We might put it in this way: That the record in this case contains an agreement that on June 3, 1904, thirty days *subsequent* to the order of the election by the county court, the city of Granby properly caused a census of its inhabitants to be taken under the provisions of section 3028, Revised Statutes 1899 (now Sec. 7239, R. S. 1909), and filed a proper statutory certificate thereof with the clerk of the county court on June 4, 1904, four days *before* the election, showing that said city of Granby had, according to said census, which is not attacked in any way, two thousand five hundred and fifty-seven inhabitants.

"Said census was also taken in conformity with the provisions of section 6300, Revised Statutes 1899 (now Sec. 9639, R. S. 1909), which section requires all courts to take judicial notice of the population so shown by said census. Appellant contends that the case stated brings the facts and the law squarely within the terms of State ex rel. v. Mitchell (St. Louis Court of Appeals), 115 S. W. 1098, never officially reported, and State ex rel. v. Cass County Court, 137 Mo. App.

698 (Kansas City Court of Appeals); that the facts in the three cases are identical, and that upon the authority of the two cases mentioned the taking and filing of the census by the city of Granby *after the date on which the election was ordered and before the day of election* ousted the county court of jurisdiction to proceed with the election, receive and cast upon the returns, and publish and declare that local option had carried within the territory inclusive of the corporate limits of the city of Granby, because the county court was bound to take judicial knowledge of the census of said city filed with the clerk four days prior to said election, and that the census showed the city, having *then* over twenty-five hundred inhabitants, could not be controlled in the premises by other than the vote of its own inhabitants. Appellant also contends that as the whole township of Granby, outside as well as inside the city limits thereof, voted at the same precinct, it could not then, and cannot now, be determined whether the proposition carried by excluding the vote of those residing within the city limits, and the whole election fails. If I felt that the two cases cited correctly declare the law, there would be nothing to do but to sustain appellant's contention, hold that local option had never been legally adopted in Newton county, and reverse this case outright. Both the Mitchell case and the Cass County case assume as the premise for all the deductions therein that a local option election under the statute is held for the purpose of determining whether intoxicating liquors shall be sold in all that portion of the county outside of the cities thereof having a legally ascertained population of over twenty-five hundred *on the day of election*. If I believed the statute intended that the legally ascertained population on the day of the election, or on any day subsequent to the day on which the election was ordered, governed, then I would concede the reasoning and conclusions reached in these two cases to be

sound. In my judgment, however, the opinion in each of those causes overlooks the plain provision, or least meaning and intent of the Local Option Law, article 3, chapter 22, Revised Statutes 1899, in force when these elections were all held (now art. 3, chap. 63, R. S. 1909), which when we consider all the sections thereof together, in order that if possible all may stand, plainly provides for a local option election to be held for the purpose of ascertaining whether intoxicating liquors shall be sold in all that portion of the county outside the corporate limits of any city thereof whose population has been legally ascertained by the county court to be over twenty-five hundred *at the date of such order of election,* and that if at the date of the order of election by the legal standard of determination any city of the county has less than twenty-five hundred inhabitants, then no matter how many inhabitants it may have by such legal standards of determination on the day of the election, it remains included in the order, is entitled to participate in the election, and is bound by the result thereof. This plain intent of the statute in question is first evinced in section 3027, Revised Statutes 1899 (now Sec. 7238, R. S. 1909), which provides for the calling of an election upon application by petition signed by one-tenth of the qualified voters of any county who shall reside outside of the corporate limits of any city or town having *at the time of such petition* a population of twenty-five hundred inhabitants or more. The Mitchell case announces the doctrine that if subsequent to the order of election, and prior to the day of election, a city theretofore having less than twenty-five hundred inhabitants files its census report, as provided by law, with the county clerk, showing more than that number, such city must be excluded from the operation of the law until such time as it votes for itself upon the proposition, but that nevertheless if by excluding the vote of such city from the returns the count shows

the adoption of the Local Option Law, it was properly declared carried in the territory outside of such city. If this be correct, what then becomes of the fact that at the time of the filing of the petition and ordering the election, the voters of such city were competent petitioners and were necessarily counted in determining whether the necessary one-tenth had petitioned for the election? The ascertaining of this fact is jurisdictional. With such a city in the count when the petition is considered by the court, and out of the count when the election is held, and out of the territory to be affected by the election, how can it be determined whether the necessary number have petitioned for the election who were legal voters in the territory over which the law, if adopted, would be permitted to operate? Then, too, we have the anomalous condition of permitting an election to be ordered and held upon the petition of voters residing in a territory over which the election can have no force and effect, which condition the Legislature clearly never intended should exist, because by the section named it expressly excludes those residing in that part of the county not to be affected from the right of petition, and properly so. But the intention of the Legislature is more clearly evinced by the provisions of section 3032, Revised Statutes 1899 (now Sec. 7243, R. S. 1909), a section of the Local Option Law not noticed in either the Mitchell or the Cass County cases. This section is as follows:

" 'If a majority of the votes cast at any election held under the provisions of this article shall be "against the sale of intoxicating liquors," it shall not be lawful for any person within the limits of such county (lying outside the corporate limits of any city or town *having, at the date of said order of election,* a population of twenty-five hundred inhabitants or more) or city, as the case may be, to directly or indirectly sell, give away or barter in any manner what-

ever, any kind of intoxicating liquors or beverage containing alcohol, in any quantity whatever, under the penalties hereinafter prescribed.'

"I think this is an express declaration that the election authorized by the Local Option Law is to be held for the purpose of determining whether intoxicating liquors shall be sold in that part of the county outside of the corporate limits of any town or city having a population of twenty-five hundred *or more on the date of the order,* according to the legal standard of determination at that date. And that since it is not contended, but the record shows, that on May 2, when the petition was filed with the county clerk of Newton county, and the order for the election entered of record, the city of Granby, according to the legal standard of determination, had on that date less than twenty-five hundred inhabitants, it properly participated in said election and local option was legally adopted in all of that county, including the said city of Granby, save alone the city of Neosho, having a population according to the order and to the date thereof, of over twenty-five hundred. The census taken and filed after the date of the order did not in any manner affect the status fixed by the order.

"It has been suggested that the fact that the Legislature fixed the qualifications of voters at local option elections as of the day of election is indicative of the legislative intent that the day of election and not the day the election is ordered governs the status of the territory to be affected. I do not think so. It is true that the Legislature has fixed the qualifications of voters as of the day of election. In doing so it simply followed the usual rule. It is competent for the Legislature to fix the qualifications of voters at any election as of any day it sees fit. So, also, it was competent for the Legislature to fix the day the election was ordered as the time when it should be ascertained

what territory is to be affected by the result of the election when held, and this it seems to me, it particularly did by the section of the statute last quoted.

"Whether or not the city of Granby, after filing its census showing over twenty-five hundred inhabitants, could have called an election later, within the four years, and voted itself out of the operation of the law is not involved here, and not necessary for us to decide.

"The judgment is therefore, reversed, and the cause is remanded for failure of the State to prove the venue.

"The opinion being in conflict with State ex rel. v. Mitchell, 115 S. W. 1098, decided by the St. Louis Court of Appeals, and State ex rel. v. Cass County Court, 137 Mo. App. 698, decided by the Kansas City Court of Appeals, this cause is hereby certified to the Supreme Court, in accordance with the mandate of the Constitution. GRAY, J., concurs in result; NIXON, P. J., concurs in a separate opinion."

After a careful consideration of the issues involved in this appeal, we have reached the conclusion that the law is correctly announced in the foregoing opinion of Special Judge MANN, and the same is adopted as the opinion of this court.

The judgment of the circuit court in this case is reversed and the cause remanded for a new trial. *Ferriss, P. J., and Kennish, J.,* concur.