CHARLES D. McLURE v. NATIONAL BANK OF COMMERCE OF ST. LOUIS et al., Appellants. —— No. 16165.

CHARLES D. McLURE, Appellant, v. NATIONAL BANK OF COMMERCE OF ST. LOUIS et al. —— No. 16168.

In Banc, November 24, 1913.

1. **EQUITABLE MORTGAGE: Private Sale: Fraud: Pleading: Prayer for General Relief.** Once a mortgage always a mortgage is a doctrine of the law, and if a deed absolute on its face is, because of a concurrent agreement, an equitable mortgage, it can be foreclosed only by proceedings in court; and, if the petition charges that the mortgagee (the grantee), without notice to the mortgagor (the grantor), sold, at private sale, land worth $75,000, for $38,000, it charges fraud such as, in the mortgagor's suit for an accounting, there being a prayer for general relief, will authorize the court to require an accounting on the basis of the actual value of the land at the time it was sold at the private sale.

2. **EQUITY: Complete Relief: General Prayer: Accounting.** When a court of equity is once invested with a matter of equitable cognizance, it will not release its hold until complete equity has been done, if there is a prayer for general relief, though the petition may be directed towards a certain specific relief. If the suit is for an accounting and the petition alleges that a certain deed was an equitable mortgage, that the property, worth $75,000, was sold, at private sale, for $38,000, it will be held sufficient to require an accounting on the basis of the value of the property at the time of the sale, if the facts alleged and proven authorize a decree on that basis and the petition asks for general relief, although its allegations would authorize an accounting on the basis of the proceeds of the sale.

3. ——: ——: ——: ——: **Equitable Mortgage: Theory of Trial: Admission of Evidence on One Theory: Appellate Practice.** Where the petition contains sufficient allegations authorizing the admission of evidence on the theory that plaintiff is entitled to an accounting on the basis of the value of the land sold at a private sale under an equitable mortgage, rather than on the basis of the proceeds of the sale, and the evidence was admitted, not on that theory, but on the theory that a

grossly inadequate price gives rise to an inference of fraud, the evidence will, on appeal, be considered for all purposes for which it was competent, as it should have been considered by the chancellor; and if it authorizes a decree to the effect that the land was worth more than it was sold for at the private sale, the judgment allowing plaintiff credit for only the proceeds of the sale, will be reversed.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED (*with directions*).

*Thomas Bond* and *W. G. Schofield* for plaintiff-appellant.

(1) The farm bought in at foreclosure sale was purchased and held by defendant bank only as collateral to secure a debt. 2 Pomeroy's Equity Jur., sec. 1055, note 1; 1 Beach on Trusts and Trustees, sec. 105, note 1; Browne on Statute of Frauds, secs. 96 and 96a; Phillip v. Jackson, 240 Mo. 310; Phillip v. Hendenberg, 181 Mo. 473; Richardson v. Champion, 143 Mo. 538; Leahy v. Witte, 123 Mo. 207; Turner v. Johnson, 95 Mo. 431; O'Fallon v. Clopton, 89 Mo. 290; Damschraeder v. Thias, 51 Mo. 103; McNeil v. Booth, 42 Mo. 189; Rose v. Bates, 12 Mo. 30; Reilly v. Cullen, 159 Mo. 323, 101 Mo. App. 32; O'Neil v. Capelle, 62 Mo. 202; Cobb v. Day, 106 Mo. 295. (2) The Statute of Frauds does not apply to frauds and trusts nor in cases where one party has fully performed the oral agreement. See cases under point 1; 20 Cyc. 280, 281; Damschraeder v. Thias, 51 Mo. 100; Simily v. Adams, 88 Mo. App. 621; Berg v. Moreau, 199 Mo. 432; Groves v. Fulsome, 16 Mo. 543. (3) The measure of plaintiff's relief is the market value of the farm at the time of the sale to Mrs. Kehlor. Turner v. Jackson, 95 Mo. 450; Reilly v. Cullen, 101 Mo. App. 32; 39 Cyc. 533. (4) In a suit in equity where the petition contains a prayer for general relief, the court may grant any

form of relief consistent with the averments of the pleadings. Phillip v. Jackson, 240 Mo. 337. (5) A trustee who makes a wrongful or illegal sale of the trust estate or who is guilty of a breach of trust is not entitled to commissions. Reilly v. Cullen, 101 Mo. App. 39; Harrison v. Craven, 188 Mo. 610; Van Raalte v. Epstein, 202 Mo. 173.

*George L. Edwards* and *Edward D'Arcy* for respondents.

(1) Under the pleadings it is clear, as the trial court held, that appellant is entitled only to credit for the net amount received by respondents on the sale of appellant's land, and not for the market value of the land. The petition is clearly a petition for an accounting of the proceeds of the Kehlor sale, and for nothing else. Plaintiff declined to amend his petition, but stood upon the petition as filed, praying for an accounting of the proceeds of the Kehlor sale. The trial court maintains the same view of this question in its memorandum filed at the time of the rendition of the decree, holding that, "There is no actual fraud charged, and the very able counsel for plaintiff time and again during the course of the trial expressly disclaimed making any such charge against the defendants, or either of them, and the amended petition herein fully sustains this disclaimer." While the trial court did allow appellant to introduce some evidence of market value, after having excluded the first witnesses offered by appellant on this point, still the admission was harmless, because it was offered merely as having a tendency to support appellant's theory that a grossly inadequate price gives rise to an inference of fraud, and was expressly restricted by the court to that purpose only. The evidence of value, therefore, cannot now be diverted from its true purpose, in order to sustain a theory of recovery rejected by the court, abandoned by appellant, and inconsistent with his

pleadings.  The pleadings are the foundation of the action, and that "the point decided must be, in substance and effect within the issue."  State ex rel. v. Muench, 217 Mo. 138; Charles v. White, 214 Mo. 204; Hope v. Blair, 105 Mo. 93; Munday v. Vail, 34 N. J. L. 418; Reynolds v. Stockton, 140 U. S. 254; 3 Hughes Gr. and Rud., 49-51.  (2) Appellant's second position is that respondents, being trustees *ex malefició,* are not entitled to credit for their expenses necessarily incurred in the management and sale of the McLure property.  Respondents deny that they were trustees *ex maleficio.*  The facts clearly show that whatever difference of opinion there may have been between these parties as to the law of this case, both parties were acting in good faith, in the protection of their rights as they saw them.  There was a difference of opinion, in the first place, as to what the contract between appellant and respondents was, and, in the next place, as to what was the effect of that contract.  That is all there is to this litigation.

GRAVES, J.—Upon our docket appear two cases, styled and numbered as above indicated.  They are in fact cross-appeals in the same case, and the brief and arguments were made in case No. 16168, in which the plaintiff is appellant.  The defendants have abandoned their appeal and now urge that the judgment below be affirmed.  The force of their brief with us is fully spent combatting the plaintiff's contentions for a new trial.  This position of counsel in this court somewhat shortens the statement.  The facts found by the chancellor below, may, owing to the attitude of defendants here, be taken as correct, except so far as they are questioned by the plaintiff.

Plaintiff sues in equity for an adjustment of his accounts and transactions with the National Bank of Commerce in St. Louis.  Pleading and proof can be

fairly covered by a short resume of the facts. As a starter it appears that the Bronx Investment Company, one of the defendants, is a subsidiary corporation of the National Bank of Commerce in St. Louis. In the transaction here involved it acted for its creator, the Bank of Commerce. Some data of the transaction, both pleaded and proven, are required for a thorough understanding of the case. On and prior to April 26, 1905, the plaintiff owned 65.43 acres of land in St. Louis county, which in 1908 was near a car line and about a half mile of the city limits of the city of St. Louis. This tract had cost plaintiff $55,000 at the date of purchase and had been considerably improved by him thereafter. He alleges and swears it to be worth $75,000 in 1908 and thereafter. In April, 1905, plaintiff gave a deed of trust on his land to secure the payment of a note made by him to the Mercantile Trust Company in the sum of $32,000. On this note he had paid $15,000 of the principal and all the interest to October 26, 1907. On and prior to May 20, 1907, the plaintiff owed to the defendant National Bank of Commerce in the city of St. Louis on his note the sum of $42,897.72, due upon demand, which was secured by the deposit of some stocks under a collateral contract with the bank. The Bank of Commerce in May, 1907, demanded more collateral, and the plaintiff thereupon executed his note to Jesse B. Mellor, his private secretary, in the sum of $20,000, and secured its payment by a second deed of trust on the St. Louis county land. This note was deposited with the National Bank of Commerce as additional collateral for the note of $42,897.72, thus giving said bank a second lien upon the land, subject to the unpaid balance due the Mercantile Trust Company of $17,000, and accrued interest. On this $17,000 balance the plaintiff defaulted, and Moberly, the trustee in the deed of trust, at the request of the Mercantile Trust Company, advertised the property for sale on August 3, 1908. The

facts from this date on constitute the crux of this case. In describing the plaintiff's claims in his petition, counsel for National Bank of Commerce, thus outline the position of the plaintiff upon these subsequent facts, as they claim such facts are stated in his petition:

"That on August 1, 1908, plaintiff was in default in the payment of the notes secured by the first deed of trust, and the property was advertised for sale thereunder;

"That the Bank of Commerce and plaintiff agreed that if plaintiff would permit the property to go to sale under the first deed of trust, the bank would buy in the property on behalf of plaintiff and take title to the property and hold same in trust for plaintiff, who should have the right, at any time within one year from the date of such sale, to redeem said property;

"That the Bank of Commerce did buy in said property at the first deed of trust sale for $18,031.59;

"That since said purchase by the Bank of Commerce, plaintiff has reduced his indebtedness to said bank by $20,040;

"That said real estate is reasonably worth $75,000;

"That in July, 1909, the Bank of Commerce sold said real estate to Lamira W. Kehlor for a purchase price, as plaintiff is informed, of $38,000, a price far below the actual value of said property."

The foregoing is the outline of that part of the plaintiff's petition as given by counsel for the bank. Other portions of the petition counsel for plaintiff construe one way and counsel for defendant construe another way, and this difference will call for a discussion in the course of the opinion. Upon the question as to what the agreement and understanding was as between plaintiff and defendant upon the manner in which the property should be handled at the sale un-

der the first deed of trust on August 3, 1908, the trial court in his findings and decree, thus speaks:

"Now, on this 19th day of February, A. D. 1910, come the plaintiff and the defendants by their respective attorneys, and this cause coming on to be heard upon the petition and answer and the evidence adduced thereunder, and having been argued by counsel for the respective parties and the court being advised and having duly considered the same, doth find the issues herein joined in favor of the plaintiff and against the defendants; and the court doth further find that the defendant, Bronx Investment Company, a corporation, acted for and in behalf of its codefendant, the National Bank of Commerce of St. Louis, as alleged in the petition herein; that on and prior to the third day of August, A. D. 1908, the plaintiff was the owner of the land described in plaintiff's petition, containing sixty-five and forty-three hundredths acres, situated in the county of St. Louis, State of Missouri; subject, however, to a first mortgage deed of trust securing a principal note of thirty-two thousand dollars, then past due, on which principal note the sum of fifteen thousand dollars had been theretofore paid, and also subject to a second mortgage deed of trust, securing a principal note of twenty thousand dollars, due May 22, 1910, which last-mentioned deed of trust and the note thereby secured were held by the defendant bank as collateral security for the indebtedness of plaintiff to said bank; that on said third day of August, 1908, the defendant bank, acting by and through its codefendant, Bronx Investment Company, at foreclosure sale under said first deed of trust, bought in the property of plaintiff mentioned and described in the petition herein at and for the sum of $18,031.59; and the court further finds that said property was bought in as aforesaid in pursuance of an agreement or understanding between plaintiff and said defendant bank; that said property, when so bought in by the de-

fendant, as aforesaid, was to be held by said bank as collateral security for indebtedness then owing by said plaintiff to said bank, including the amount paid by said bank at the foreclosure sale.

"The court doth further find that thereafter, on or about the 7th day of July, A. D. 1909, said defendant bank, acting through its codefendant, Bronx Investment Company, sold said real estate so bought in at the foreclosure sale, as aforesaid, to one Lamira W. Kehlor, at and for the price and sum of $38,000; that said sale of real estate was made by the McNair & Harris Real Estate Company a corporation engaged in the business of buying and selling real estate in the city of St. Louis, acting for the defendants and that the net proceeds arising from said sale, after deducting the commissions of said real estate agents, was the sum of $36,818.10; and the court finds and so decrees that the defendant bank was and is chargeable with the net surplus arising from said sale over and above the amount paid out by the defendant bank at the foreclosure sale, from which amount, on an accounting between the plaintiff and said bank, should be deducted the amount paid for back taxes and for taxes for 1908, amounting to the sum of $1788.79."

The evidence in the record amply justifies this finding. In fact, the counsel for the bank in their brief ask us to affirm this finding of facts and the decree entered thereon. The plaintiff claims that he is entitled to receive the reasonable value of his land, rather than the net proceeds of the alleged unauthorized sale, and this is the big question in the case. With it, is a question of pleading. Other facts, if necessary, may be adverted to in the opinion, but the foregoing sufficiently outlines the case, with the exception of a short statement of the result reached in the decree *nisi*. After finding the facts as to the agreement as above set out, and after finding that plaintiff was entitled to credit for the net proceeds of the sale, the court then

finds the sum then due by plaintiff to the bank, and after deducting the credit aforesaid, finds that the plaintiff is yet indebted to defendant bank in the sum of $10,391.70, and decrees that upon the payment of that sum within ten days, the plaintiff shall receive from the defendant all the collateral deposited to secure the $42,000 note, supra, including the Mellor note for $20,000.

As stated in the outset, from this decree both parties appealed, but the bank abandons its appeal and asks that the judgment be affirmed. The plaintiff, however, pushes his claims, as hereinabove stated. These several contentions will be discussed in their order.

I. At the threshhold we are met with the contention that the bill in equity in this case is one only asking for an accounting on the basis of the sale of the Bronx Investment Company to Mrs. Kohler, and that to direct a decree for an accounting on the basis of the value of the property at the date of sale, would be to direct a decree beyond the purview of the pleadings. With all due regard for the ability of distinguished counsel who represented the plaintiff, it must be said that the bill is not as clearly drawn as it might have been, but we are impressed with the fact that it sufficiently outlines the facts and circumstances of the case in such manner that, when coupled with a prayer for general relief (as is the fact here), would authorize a decree as broad in terms as is contended for by the plaintiff. The petition pleads facts sufficient to make the trustee's deed to Bronx Investment Company an equitable mortgage, and these facts were so found by the court *nisi* and defendants ask us to affirm that finding here. The doctrine once a mortgage always a mortgage applies. Such a mortgage is one that can only be foreclosed by proceeding in court, and by a sale in pursuance of a judg-

**Pleading:**
**Accounting:**
**Equitable**
**Mortgage:**
**General Prayer.**

ment in that proceeding. The present petition charges that in the face of this fact the defendants sold this property at private sale, without notice to plaintiff, at $38,000, when it was well worth $75,000 at the time, which is in law a charge of at least constructive fraud, if not actual fraud. Indeed it might be said, owing to the gross inadequacy of price, that it rises to the plane of a charge of actual fraud. This, however, is immaterial. Fraud is fraud, whether it be constructive or actual, and the petition by all reasonable intendments charges fraud. Not only does the petition charge an unlawful private sale for a grossly inadequate price, but it further charges that defendants wrongfully converted the proceeds and denied that plaintiff had any rights therein. The bill is exceedingly long, but it states all necessary facts upon which could be predicated an accounting or recovery of the value of the property at the date of sale, and to it also is coupled a prayer for general relief.

As a general rule of equity practice it can be said that when a court of equity once gets hold of a matter of equitable cognizance, it will not release such hold until complete equity has been meted out in the case. Upon this question we have never departed from the old landmarks. Thus, in Holland v. Anderson et al., 38 Mo. l. c. 58, it is said:

"This was a suit in the nature of a bill in equity, for rescission and cancellation of a contract in respect of an exchange of lands. The petition asked for rescinding the contract, and also prayed for general relief; but it was admitted on argument that the prayer for rescission could not be granted, because the property had been changed in such a manner that it was impossible to have it restored. But it is contended that, although that part of the bill failed, the court should still have awarded the plaintiff compensation, under the prayer for general relief.

"Judge Story says, 'The usual course is for the plaintiff, in this part of the bill, to make a special prayer for the particular relief to which he thinks himself entitled, and then to conclude with a prayer for general relief, at the discretion of the court. The latter can never be properly and safely omitted; because, if the plaintiff should mistake the relief to which he is entitled, in his special prayer, the court may yet afford him the relief to which he has a right, under the prayer of general relief.' [Sto. Eq. Pl., sec. 40.]

"It is a well-established rule, that where a court of equity once acquires jurisdiction of a cause, it will retain it to do full and complete justice. It will sometimes give damages, which are generally only recoverable at law, in lieu of equitable relief, where it has obtained jurisdiction on other grounds. [Wiswall v. McGown, 2 Barb. (N. Y. S. C.) 270.]

"We entertain no doubt about the petition being sufficient under the general-relief clause to enable the plaintiff to obtain compensation, providing the evidence made out a case showing he was entitled to such relief."

And this is the doctrine now. [Phillips v. Jackson, 240 Mo. l. c. 336.]

So that it may be granted that the plaintiff in the case at bar asked for both specific and general relief, yet if the facts pleaded and proven, authorize a decree for the value of the property at the time of sale, under the prayer for general relief, rather than the proceeds of the sale, and the nice equities of the case demand such a decree, it should be entered. As above indicated this bill in equity sets out the necessary facts, and the proof sustains the facts pleaded. In the Phillips case, supra, by unanimous voice we said:

"However, it is well settled in this State, that in a suit in equity under our statutes, the court may give any relief consistent with the allegations and pleadings; and that where the petition contains prayers for

general relief, it may also give relief different from the specific relief sought. [Mead v. Knox, 12 Mo. 284; Holland v. Anderson, 38 Mo. l. c. 59; Henderson v. Dickey, 50 Mo. 161; Mason v. Black, 87 Mo. l. c. 346; Vogelsong v. St. Louis Wood Fibre Plaster Co., 147 Mo. App. 578.]''

The cases cited in the Phillips case thoroughly support the text thereof as quoted above. The contention, therefore, that the trial court could not have entered up a decree covering the value of the lands· at the time they were converted by the defendants is overruled. If the facts demanded it, such decree was not only authorized, but equity would require it.

II. Having reached the conclusion that the bill filed in this case is broad enough to authorize a decree allowing the plaintiff the value of the property converted at the date of the conversion, we reach several other contentions. Of these in order:

In the first place it is contended that this was not the theory below. In this defendants are in error. It is true that they contended that the petition was not broad enough to admit evidence upon the· value of the lands at the date of the sale. It is also true that the trial court took the same view, but this does not eliminate plaintiff's theory of his case and of his pleading. From start to finish counsel for plaintiff urged that the petition was broad enough to cover that element, and even when it was suggested that the plaintiff could amend the bill, he still urged that his bill was sufficient. to admit proof as to the value of the land at the date of its sale by defendants to an innocent purchaser. Had the trial court adhered to his first ruling and excluded all of this evidence, then it would be· necessary for this court to remand the cause, if we thought such evidence material under the pleadings. As indicated in our paragraph one the plaintiff· was entitled to introduce this

*Evidence: Admitted for One Purpose: Considered for All Competent Purposes.*

evidence under the petition as it stood, and for the purpose of showing what allowance or credit should be given him in the adjustment of the accounts between him and the National Bank of Commerce. The evidence clearly tends to show what the Bronx Investment Company was a trustee and held this property for the plaintiff; the law fixed the right of sale and the manner of sale; the sale made was wholly unauthorized; the property under the evidence was sacrificed at an unauthorized private sale; shortly before this private sale of the whole for $38,000, the plaintiff was considering a sale of a part thereof for $40,000. All questions considered, the crucial question now presented is, is there evidence of the value here so that we can consider it, and formulate a right judgment therefrom? We think so. As stated above the trial court first excluded this evidence, but later admitted it on the theory, quoting from defendant's brief in the case, "because it was offered merely as having a tendency to support appellant's theory that a grossly inadequate price gives rise to an inference of fraud, and was expressly admitted for that purpose only." Whatever was the theory of the trial court, the evidence is in the record before us, and being in the record can be considered for all purposes for which it is competent. Not only does the plaintiff introduce evidence as to the value of the land at the date of the sale, but the defendants put on their expert real estate man upon the same question, and his manner upon the stand tended most strongly to corroborate the evidence in behalf of plaintiff. He in effect admits that by experience he was qualified to give an opinion as to the reasonable market value at the time of sale, but would not express an opinion. When asked if $38,000 was a reasonable price for the property, he declined to say that it was. So that we not only hold that the petition was broad enough to admit this evidence upon the question of the reasonable market value, but that the evidence itself,

although admitted for another purpose, is in the record, and we can consider it for all legitimate purposes. It was not only competent upon the theory upon which it was admitted, but upon the other theory as well. Being competent upon any theory, the defendant cannot now say that they were misled in not undertaking to rebut it. Defendants must come prepared to rebut all evidence, which is competent upon any theory of the case. In the instant case they did attempt to rebut the evidence, but signally failed. Their own real estate man would not say that $38,000 or even $40,000 was the reasonable market value of the land. Under the evidence, what was the value of this land at the time plaintiff was deprived of it, by the act of defendants conveying it to an innocent purchaser, or supposedly an innocent purchaser? The land cost plaintiff about $55,000 in 1892 and 1895. The most valuable portion he paid $50,000 for in 1892, and later in 1895 paid about $5000 for the other portion. He added considerable by way of improvements. It lies about one-half mile from the city limits. Experts placed its value at from $800 to $1000 per acre. Plaintiff placed its reasonable value at $75,000 for the tract. We think that $900 per acre was the reasonable value of this property at the date of its conversion. From this it follows that the plaintiff should have been credited in the account stated by the trial court in the decree *nisi* with $58,887 instead of $36,818.10, on account of this land. Other matters of the account are properly stated. In other words, the decree *nisi* is right in all respects, except the trial court should have allowed plaintiff $58,887, the reasonable value of the land, instead of the $36,881.10, the proceeds of the sale after deducting the expenses and commissions of the sale. When the account is thus recast, as of the date of the judgment below, the plaintiff would not only be entitled to recover his collaterals in the petition and judgment described, without further payment of money, but would

be entitled to recover from the defendants the sum of $11,678.20. This will not more than make the plaintiff whole for the wrongful act of the defendants. This private sale was in law a fraud upon the plaintiff, for which defendants should be made to account. We think from all the evidence the land of which they deprived the plaintiff was worth at least the $900 per acre we have allowed in the figures above given. Let the judgment be reversed and the cause remanded, with directions to the trial court to enter up a decree in accordance with the views above expressed.

PER CURIAM.—In the foregoing opinion of GRAVES, J., in Division, WALKER, J., concurs *in toto.* Other members of the court agree that the trustee's deed to the Bronx Investment Company is an equitable mortgage and that the private sale of the property was an unlawful and unauthorized one, and further agree that the plaintiff is entitled to recover on the basis of the value of the property sold at the time of the sale. A majority of the court, however, are of the opinion that the cause should be remanded to the end that the issue of the value of the land may be more thoroughly tried, and the whole court is of the further opinion that the new trial should be confined to that single issue, all other issues having been properly tried and determined before. Either party may so amend the pleadings, if such is desired, so as to clearly draw the issue upon this question.

The judgment is therefore reversed and the cause remanded to the circuit court with directions to hear testimony upon the value of the land in dispute at the date of the sale, and to confine such new trial to that issue alone, and after having determined such value to then enter up judgment in accordance with the facts heretofore found and then found upon this issue. *Bond, J.,* having been of counsel, did not sit.