STATE ex rel. CITY OF ELVINS et al., Relators, v. JOHN MARSHALL et al., Respondents.

### St. Louis Court of Appeals, June 2, 1914.

1. **LOCAL OPTION: Municipal Census: Sufficiency of Record.** Where a census was taken by a city, pursuant to Sec. 7239, R. S. 1909, authorizing the taking of such a census to determine whether the city has twenty-five hundred inhabitants or more, so as to be entitled to vote separately on the question of local option, an entry in the journal of the board of aldermen, reciting that the census report filed by a designated person, showing "2521 was officially accepted by the board," although quite informal, was a sufficient compliance with the provision of the statute requiring an entry of the result of such census to be made in the records of the city's legislative body.

2. **EVIDENCE: Definitions: "Proof."** "Proof" is defined to be the effect of evidence; the establishment of a fact by evidence.

3. **LOCAL OPTION: Municipal Census: Immunity from Collateral Attack.** Where a census is taken by a city, pursuant to Sec. 7239, R. S. 1909, authorizing the taking of such a census to determine whether the city has twenty-five hundred inhabitants or more, so as to be entitled to vote separately on the question of local option, and the result of such census is entered upon the records of the legislative body of the city, such entry, or a certified copy thereof, when filed with the clerk of the county court, is binding upon the county court, precluding it from going back of the same to determine whether or not the census was false, fraudulent or void.

4. ————: ————: **Judicial Notice.** A county court is required to take judicial notice of a census taken by a city, pursuant

183 Mo. App.—38

to Sec. 7239, R. S. 1909, authorizing cities to take a census to determine whether they have twenty-five hundred inhabitants or more so as to be entitled to vote separately on the question of local option, and especially is this true in view of Sec. 9639, which also authorizes the taking of such a census and provides that, after such census is returned, all courts of the State shall take judicial notice of the population of the city taking the same.

5. **PROHIBITION: Nature of Remedy.** Prohibition is a direct, and not a collateral, attack upon the jurisdiction of the inferior court proceeded against.

6. ————: **Adequacy of Other Remedies: Local Option.** Where a census taken by a city, pursuant to Sec. 7239, R. S. 1909, shows that it has more than twenty-five hundred inhabitants, and the result of such census is entered upon the records of the legislative body of the city, and a certified copy thereof is filed with the clerk of the county court, prohibition will lie to prevent the county court from disregarding such census and ordering a local option election to be held in such city along with the balance of the county, since the county court has no jurisdiction to go back of such census to determine its validity and regularity; and the writ cannot be denied on the ground that the city has a complete and adequate remedy by way of an election contest.

Prohibition.  Original Proceeding.

WRIT MADE ABSOLUTE.

*B. H. Boyer* for relators.

*B. H. Marbury* and *Fauntleroy, Cullen & Hay* for respondents.

ALLEN, J.—This is an original proceeding in this court, wherein relators seek a writ of prohibition against the judges of the county court of St. Francois county. The relators are the city of Elvins, a city of the fourth class situated within said county, the mayor thereof, and certain taxpaying citizens and residents of such city.

On April 20, 1914, a petition was filed with the county court, under the provisions of the statute relat-

ing thereto, alleging that the city of Farmington was, at such time, the only incorporated city in such county having a population of 2500 inhabitants or more, and praying the county court to order and call a "Local Option" election to be held in and for all of said county outside of the city of Farmington, and including the city of Elvins.

Under the provisions of sections 7238 and 7239, Revised Statutes 1909, any incorporated city or town having a population of 2500 inhabitants or more is entitled to vote separate and apart from the remainder of the county in which it is situated, to determine whether or not spirituous and intoxicating liquors shall be sold within its limits. These sections were sought to be repealed by the last Legislature, by what is known as the "County Unit Bill." (Laws of Missouri 1913, p. 388, *et seq.*) However, the operation of said last mentioned act was suspended by the filing of referendum petitions, and said law is now so held in suspension, pending a vote thereon by the voters of the State at large, whereby the provisions of the statute of 1909, above referred to, still remain in force and effect. [See State ex rel. Kemper v. Carter et al., 257 Mo. 52, 165 S. W. 773.]

The proviso to section 7239, supra, is as follows: "*Provided,* that for the purpose of determining the fact of whether or not any town shall be governed by the provisions of this section, such body having legislative functions therein may, under an ordinance thereof, take a census of the inhabitants of such town, and the result of such census shall be entered upon the journals or records thereof, and such entry, or a certified copy thereof, shall be proof of such fact, and shall be filed with the clerk of the county court of the county in which such town is situated."

It appears that during the year 1913 an ordinance was enacted by the board of aldermen of the city of Elvins, providing for the taking of a census of the

inhabitants thereof; which census was taken by an enu-
merator, one C. R. Huddleston, appointed therefor, pur-
suant to the provisions of said ordinance, and the same,
together with sworn "return" of such enumerator, set-
ting forth the result of said census was filed with the
clerk of said city. The result of the census thus taken
showed the city of Elvins to have a population of 2521
inhabitants. And thereafter, on September 4, 1913, as
appears by the record of the meeting of the board of
aldermen of that day, the "census report filed by C. R.
Huddleston, showing 2521 was officially accepted by
board;" and the certified copy of said "return" of
such census enumerator, theretofore filed with the city
clerk, was filed with the clerk of the county court.

It appears that, at the time of the application to
this court for a writ of prohibition, the county court
had assumed jurisdiction over the subject-matter of
the local option petition before it, and was proceeding
therewith in disregard of the census taken by the city
of Elvins as above mentioned, having inquired into
certain charges of illegality and fraud in the taking
thereof, and having found that such census "was false,
fraudulent and void, and not based upon any proper
and legal list, count or enumeration of the inhabitants
of the city of Elvins."

The question, therefore, before us is whether or
not the county court, in so proceeding, was exceed-
ing its jurisdiction in the premises.

As to the duty of respondents to accept the cen-
sus of the city of Elvins, taken and adopted by the
board of aldermen thereof, as aforesaid, and to proceed
accordingly in ordering the election, we have little
doubt. Respondents contend that such census was
fraudulently taken for the purpose of preventing the
city of Elvins from being included within the remain-
der of the county (outside of Farmington) in the hold-
ing of the local option election; that it is a mere pre-
tended census or enumeration of the inhabitants of

such city, and was fraudulently "padded" with the names of persons not inhabitants thereof. Likewise the regularity of the proceeding had by the board of aldermen of the city of Elvins in respect thereto is assailed. But it appears that the census was taken under and by virtue of an ordinance of the city of Elvins, and, when taken, was duly reported to the board of aldermen and by the latter accepted and adopted as and for a proper census of said city, and that the result thereof was entered upon their records, and the same duly certified to the clerk of the county court, in accordance with the provisions of section 7239, supra.

The county court had before it the record of the proceedings of the board of aldermen relative to the census in question. It cannot be doubted that the ordinance authorizing and providing for the taking thereof is valid upon its face, and within the authority conferred by section 7239, supra. The statute is general in its terms and quite indefinite as to the character of the census to be taken or the method to be pursued in the taking thereof. [See Flowers v. Smith, 214 Mo. l. c. 140, 112 S. W. 499.] It merely provides that the body having legislative functions in such city may, under an ordinance, take a census; and requires that the "result" thereof be entered upon its records and filed with the clerk of the county court.

In the case before us, the entry in the journal of the board of aldermen showing the result of such census is quite informal, reciting merely that the "census report filed by C. R. Huddleston, showing 2521 was officially accepted by board." However, this appears to be a substantial compliance with the statute in this regard; the evident purpose of this requirement of the statute being to afford proof that the legislative body of the city had acted upon and adopted the enumeration taken pursuant to the ordinance, as and for an official census of the city.

The statute provides that such census may be taken *"for the purpose of determining the fact* of whether or not any town shall be governed by the provisions of this section;" and that the entry of the result of such census in the records of the city's legislative body *shall be proof of such fact.*

Proof is defined to be: "The effect of evidence; the establishment of a fact by evidence." [See Black's Law Dictionary (2 Ed.), "Proof."] The statute does not declare that such entry shall be evidence merely of the fact of the population of a city or town, to determine whether or not it shall be governed by the provisions of the section, nor prima facie proof thereof, to be overthrown by the effect of other evidence adduced. And although it is not specifically declared that such shall be conclusive proof thereof, a reasonable interpretation of the statute would seem to be that the Legislature intended to make such entry, or a certified copy thereof, binding upon the county court in a proceeding of this character, precluding it from going back of the same, where the city, pursuant to the statute, has caused a census to be taken by virtue of an ordinance, and adopted the same, and the result thereof has been entered upon the records of its legislative body.

Again, the taking of such census was also within the authority conferred by section 9639, Revised Statutes 1909, applying to cities of the fourth class as well as to other towns and cities. The last named section provides for the taking of a municipal census, and further provides that "after said census is returned, . . . all courts of this State shall take judicial notice of the population of such city or town."

Our courts have constantly taken judicial notice of the population of cities of the State, as determined by such municipal censuses. [See State ex rel. v. Dolan, 93 Mo. l. c. 471, 6 S. W. 366; State ex rel. v. Wofford, 121 Mo. l. c. 71, 25 S. W. 851.] And if the appel-

late courts and courts of general jurisdiction through-out the State are required to take judicial notice of such a census, surely a county court must do likewise. And such was held to be the case, in a proceeding of this character, in State ex rel. v. Cass County Court, 137 Mo. App. 698, 119 S. W. 1010.

And to the charges of fraud in and about the taking of the census, it may be said that the proceedings respecting the taking thereof, and the adoption of the same as and for an official census of the city, and which upon the face thereof appear to be regular and in substantial compliance with the statute, were had in and before a duly constituted tribunal, to-wit, the board of aldermen of the city of Elvins, directly empowered by law to act in the premises. From which it appears that the result is not subject to the collateral attack which respondents now seek to make upon it.

In State ex rel. v. Cass County Court, supra, l. c. 708, the Kansas City Court of Appeals, through ELLISON, J., as to this very matter said:

"Indeed it is fundamental rule of law that the acts of a body entrusted by law with the performance of certain specified proceedings which on their face are regularly taken, are not subject to attack except in a direct proceeding for that purpose. This rule applies as rigidly to special and inferior bodies as it does to superior courts. In most instances presumptions upholding proceedings in superior courts will not aid omissions in proceedings of those of inferior grade. But where the record of the latter, on its face, is regular, it is not subject to collateral attack. In such instance the matter of power and dignity of the body does not enter into the question. [State ex rel. v. Wilson, 115 S. W. 549; Lingo v. Burford, 112 Mo. 149; Jeffries v. Wright, 51 Mo. 215; State v. Evans, 83 Mo. 319; Union Depot Co. v. Frederick, 117 Mo. 148; Light & Water Co. v. Lebanon, 163 Mo. 250; 1 Black on Judgments, sec. 273; Freeman on Judgments, sec. 523; Van-

Vleet on Collateral Attack, secs. 62, 468.]   Therefore respondent's allegation of fraud in the census was the assertion of matter which could not be made an issue in the present case.''

In State ex rel. v. Mitchell, 115 S. W. 1098, the same doctrine is announced by this court as in the Cass county case, supra, so far as concerns the right to collaterally attack the city's census.   While both of these cases are in effect overruled as to another question involved, by the decision of the Supreme Court in State v. Jaeger, 240 Mo. 1, 144 S. W. 103, the latter in nowise weakens their authority as to the matter here under consideration.   In the Jeager case, contrary to the rulings in the Cass county and Mitchell cases, supra, it was held that a census taken and filed after the day upon which the county court ordered the holding of the election, did not in any manner affect the status fixed by the order.   This was because of the wording of the statute under consideration, as will appear by reference to the opinion originally written by Hon. Edgar P. Mann, acting as Special Judge of the Springfield Court of Appeals, and adopted by the Supreme Court.   The question now under discussion was not there involved, but it is significant that, in the course of the opinion, the census of a city, in cases of this character, is twice referred to as the *legal standard of determination,* whereby the population of such city is to be determined by the county court.

We are referred by respondents to the opinion of the Springfield Court of Appeals in State ex rel. v. Wooten, 139 Mo. App. 221, 122 S. W. 1103.   That was a proceeding by mandamus to compel the issuance of a dramshop license to the relator, and constituted an indirect attempt to contest the validity of a local option election theretofore held under an order of the county court.   And if what was there said, on motion for rehearing, is to be taken to mean that a county

court has jurisdiction to inquire into a city census, where the proceedings had by the city's legislative body are regular upon their face, and in substantial compliance with the statute, such appears to be in contravention of the statutory provisions above referred to, and in conflict with State ex rel. v. Wofford and State ex rel. v. Dolan, supra, as well as with what is said in State ex rel. v. Jaeger, supra.

In Flowers v. Smith, 214 Mo. l. c. 141, 112 S. W. 499, to which we are referred by respondents, it is said that "if the affidavit of the enumerator is the only thing on file in the office of the city clerk, and no action was taken by the council accepting and approving that report and spreading the same on record, it does not comply with the requirements of the statute." But such is not the situation here, for it appears that there was a substantial compliance with the statute in this respect.

Respondents also cite State v. Morgan, 144 Mo. App. 35, 128 S. W. 839. But there it was said: "The most that can be said of the proof offered by defendant is that it shows an abortive attempt at taking a census. The mayor testified that he made an alphabetical list of the inhabitants of Bevier, but the list was not filed with the city clerk, no record was made of it and it was turned over to some business men for commercial uses."

Other authorities cited in this connection need not be discussed.

It is also urged by respondents that, under the authority of State ex rel. v. Carter, supra, the writ should not go in this case, for the reason that there is a complete remedy by way of a contest of the election sought to be held.

But the last mentioned case was an original mandamus proceeding in the Supreme Court, having for its object the issuance of a dramshop license, and constituting an indirect attack upon the validity of a local

option election previously held. And we do not regard that case or the cases there cited as authority for respondent's contention. We cannot say that the relator has here a complete and adequate remedy by way of an election contest; and this is a direct and not a collateral attack upon the jurisdiction of the county court. And if that court is proceeding beyond its jurisdiction in the premises, we think that our writ should issue to prohibit it from so doing.

It follows that our preliminary rule in prohibition should be made absolute, and writ awarded accordingly. It is so ordered. *Reynolds, P. J.,* concurs; *Nortoni, J.,* not sitting.