.HEIL et al., Appellants, v. HEIL.

Division Two, December 13, 1904.

1. **TRUSTS: Express and Resulting: Parol. Evidence.**  Parol evidence is admissible to prove a resulting trust, but not an express trust, for the statute requires an express trust to be ."manifested and proved by some writing signed by the party," etc.

2. ———: **Resulting Trust.**  Merely because a trust is not evidenced by a writing it does not follow that it is a resulting trust.  The statute defines a resulting trust to be one which arises or results by implication of law, as where one party pays the purchase price for land and the deed is made to a third party, in which case a resulting trust immediately arises in favor of the party paying the consideration.

3. ———: **Express Trust: What Is.** An express trust is one which defines and limits the uses and purposes to which certain property shall be devoted, and defines the duties of the trustee as to its management, control and disposition.

4. ———: ———: **Deed for Certain Purposes.** A son bought property, and claims that he paid his money therefor. He had the land conveyed to his father, but the deed was silent as to the reason for the conveyance to him. He testified that he possessed small means and was out of debt and that his father possessed large means, and that he had the property deeded to his father in order that his father might furnish the money with which to put up a building thereon, and that after that building was put up and completed the property was to revert to him. *Held*, that this was an express trust.

5. ———: **Resulting Trust: Proof.** The evidence to show that the consideration for the purchase of land, conveyed to a father, was paid by his son, should be clear, cogent and satisfying to the chancellor, in order to authorize a court of equity to decree to the son a resulting trust therein. And in this case it is held that the evidence offered to show that the money which paid for the land was the son's and not the father's, does not meet the test.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty*, Judge.

REVERSED AND REMANDED.

*Eugene Buder* for appellants.

(1) The trust established by defendant's answer and evidence is clearly an express trust. Mullock v. Mullock, 156 Mo. 431; Hillman v. Allen, 145 Mo. 638; 27 Am. and Eng. Ency. of Law (1 Ed.), 6; Bispham, Equity, secs. 63-65. (2) An express trust relating to realty can not be established by oral evidence, and defendant can not circumvent the law, by endeavoring to convert it into a resulting trust. The express covenants of the deed to plaintiff can not be overcome by such evidence. R. S. 1899, sec. 3416; Mullock v. Mullock, 156 Mo. 431; Green v. Cates, 73 Mo. 115; Hillman v. Allen, 145 Mo. 638; Stevenson v. Crapnell, 114 Ill. 19; Curd v.

Brown, 148 Mo. 92; Weiss v. Heitkamp, 127 Mo. 23; 1 Perry on Trusts, sec. 79. (3) An implied or resulting trust can be established only by evidence that is so clear, strong and unequivocal, and so definite and positive, as to leave no room for reasonable doubt as to the existence of the trust. A preponderance is not sufficient. Ringo v. Richardson, 53 Mo. 385; Burdett v. May, 100 Mo. 13; Allen v. Logan, 96 Mo. 591; Roberts v. Walker, 101 Mo. 597; Lewis v. Ziegler, 105 Mo. 604; Taylor v. Von Schraeder, 107 Mo. 206; King v. Isley, 116 Mo. 155; Bradley v. Bradley, 119 Mo. 58; McFarland v. LaForce, 119 Mo. 585; Reed v. Painter, 129 Mo. 674; Curd v. Brown, 148 Mo. 82; Wacker v. Wacker, 147 Mo. 246; Hillman v. Allen, 145 Mo. 638; Mullock v. Mullock, 156 Mo. 431. (4) Equity cases on appeal will be tried *de novo*, in the appellate courts; the legal evidence alone will be considered, and such judgment and decree entered as is warranted by the facts. Lins v. Lenhardt, 127 Mo. 371; Harlan v. Moore, 132 Mo. 483; Blount v. Spratt, 113 Mo. 48; Palmer v. Crisle, 92 Mo. App. 510; Rice v. Shipley, 159 Mo. 405. (5) (a) From long, unreasonable delay equity will raise the presumption of acquiescence, waiver and abandonment. Tatum v. Holliday, 59 Mo. 426; Gillespie v. Stone, 70 Mo. 516; Schradski v. Albright, 93 Mo. 42; Jones v. St. Louis, 79 Mo. 92; Goodson v. Goodson, 140 Mo. 217. (b) In order to avoid dismissal of a bill on the ground of laches the complainant must set forth therein such equitable considerations as will excuse the laches and explain the delay. Wendover v. Baher, 121 Mo. 291; Hatcher v. Hatcher, 139 Mo. 614; 2 Story, Eq. Jur. (13 Ed.), sec. 771. (6) He who seeks equity must do equity. Pomeroy, Equity Jur., secs. 385-6; Hanson v. Keating, 8 Jurist 950; Case Plow Works v. Ross, 74 Mo. App. 437; Axman v. Smith, 156 Mo. 286. (7) After the cause was revived in the names of the executor and legatees and devisees of deceased plaintiff, there should have been a further trial of the case, and judgment entered

without such trial is void. Gauss v. Hussman, 22 Mo. App. 115; Schuster v. Schuster, 93 Mo. 443.

*J. P. Vastine* for respondent.

(1) The trust established by respondent's answer and evidence is clearly not an express trust. Mullock v. Mullock, 156 Mo. 431; Hillman v. Allen, 145 Mo. 638; 2 Bouvier's Law Dic. (12 Ed.), p. 615; Foster v. Friede, 37 Mo. 36. There is no writing and it is indispensable to an express trust. Mount Calvary Church v. Albers, 174 Mo. 340; Butler v. Carpenter, 163 Mo. 606. When the facts are that the purchase price of the land was paid by one party and the legal title thereto taken in the name of another, a trust by operation of law arises from that fact in favor of the party making the payment, and that, too, in the absence of an express agreement to that effect. If the averments of defendant's answer are true, he is entitled to the relief sought. Butler v. Carpenter, 163 Mo. 604; Richardson v. Champion, 143 Mo. 543. That respondent paid for the ground is clear and the burden was on appellants to overthrow the prima facie case thus made. A distinction exists between contests between grantor and grantee, and a third party and the grantee. Rogers v. Ramey, 137 Mo. 608. (2) The evidence in behalf of respondent more than meets all the demands of the law. (3) As to the defense of laches: A claim of title is never stale while the claimant remains in the actual possession of the premises under color of title or claim of right. The statute of limitations only bars actions for possession and not defenses where the party is in possession. Sebree v. Patterson, 92 Mo. 451. The statute of limitations makes the period of limitation for suit ten years. Hunter v. Hunter, 50 Mo. 445; Zoll v. Carnahan, 83 Mo. 41; Lewis v. Schween, 93 Mo. 31; Burdett v. May, 100 Mo. 20. A meritorious defense is not barred by said statute. Butler v. Carpenter, 163 Mo. 597.

. GANTT, P. J.—This is an appeal from a judgment of the circuit court of the city of St. Louis.  The action is ejectment commenced by Bonifacius Heil in his lifetime for four rooms, kitchen and bath-room on the second floor of a building known as number 2903 South Jefferson avenue in the city of St. Louis, and the two-story stable in the rear of 2901 South Jefferson avenue, said buildings being erected on lot 12 of block 12 of the subdivision of the Lami tract in block 1993 of the city of St. Louis.  The ouster was laid as of July 2, 1899, and rents and profits alleged to be of the value of $25 a month.  Damages in the sum of $500 were claimed.  The answer is a general denial and the following equitable defense:

"Defendant for his further answer says that he is a son of plaintiff and that, on the twenty-second day of September, 1892, George Ande and wife conveyed by warranty deed the realty described in plaintiff's petition, to-wit, lot number 12 in block number 12 of the third subdivision of the Lami tract, in block number 1993 of said city, to plaintiff by deed, recorded October 16, 1892, in book 1105, page 424, recorder's office of said city, for and in consideration of $3,286, which conveyance was made at the instance and request of defendant, who alone paid said money to said George Ande, and plaintiff paid no part of said sum, either to said Ande or to defendant, and that prior to the sixteenth of October, 1892, plaintiff had no conversation with defendant and said Ande, or either of them, concerning the purchase of said lot, or as to said lot in any way whatever, and said title was put in plaintiff's name as aforesaid, the plaintiff then, and for some time thereafter being in ignorance of such action and fact, all of which was done by defendant only on the belief of defendant that money could be raised on said lot in the name of plaintiff better than in his own name, and the plaintiff would aid him with his name and credit

to secure the erection of buildings on said lot, and for no fraudulent or other purpose, said defendant then and there being a man of some means and wholly free from debt, and plaintiff being then a man of large means, to-wit, fifteen thousand dollars.

"Defendant states that on the second day of March, 1894, he contracted in writing with George M. Roeder, in name of plaintiff, to erect buildings on said lot for $9,100, and that Roeder thereafter, per his contract, and prior to October 1, 1894, erected buildings on said lot of the value, to-wit, $9,100, said contract being signed by plaintiff, and said work was done under the supervision of defendant, who gave and put into the erection of said buildings of his own money and labor, to-wit:

| | | |
|---|---|---|
| 1904. | | |
| Cash, | Thirty-five hundred dollars | $3,500.00 |
| | and in labor and plumbing, gas-fitting, electrical work, tin-roofing and galvanized iron work, fifteen hundred dollars, | 1,500.00 |
| | and paid for street-guttering and sidewalks on said lot in 1894, seven hunded dollars, | 700.00 |
| | paid for taxes, state and city, 1892 and 1893, | 21.73 |
| | and paid for water tax, 1895, 1896 and 1897, | 50.00 |
| | In all, | $5,771.73 |

"Defendant states that on April 26, 1894, plaintiff and wife executed a deed of trust on said lot of ground to secure the payment of a principal note of sixty-five hundred dollars, payable in three (3) years from said date, and six interest notes, each for one hundred and sixty-five dollars, payable in six, twelve, eighteen, twenty-four, thirty and thirty-six months from said date, to Cath Merz, trustee; said deed is recorded in

the recorder's office in book 1213, page 119 — all of which money went into the payment of the erection of said buildings, said loan and payments being made through and at the instance of defendant.

"Defendant states that, on and prior to the twenty-eighth day of April, 1899, plaintiff paid said deed of trust notes, and on said date he and his wife executed a deed of trust on said realty to secure the payment of a promissory note of seven thousand dollars, payable three years after said date, and six interest notes, each for $210, payable 6, 12, 18, 24, 30 and 36 months after said date, which deed is recorded in book 1509, page 189, and is now a lien on said lot.

"Defendant states that in September, 1894, he, with his wife and children, moved into the rooms described in plaintiff's petition, and ever since and now occupies them; that he never paid rent to plaintiff, and plaintiff prior to, to-wit, 5th October, 1898, never asked him to pay any, that he treated said property and buildings as his own, and that the purchase of said lot was made for his benefit and not that of plaintiff.

"Defendant states that plaintiff has collected rents of said buildings from September 1, 1894, to date, and exactly how much he has received, defendant is unable to state, as he does not know, but that the rental value thereof, outside of rooms occupied by defendant, was one hundred and thirty dollars per month from September 1, 1894, to date, and defendant states the fact to be that plaintiff has received that much from said premises from said date to the present, and that plaintiff has received from said property net sufficient to pay said mortgage and deeds of trust, and fully to reimburse himself for any money and time he may have given to the erection and care of said buildings, and to leave a large balance due to defendant.

"Defendant states that, from March, 1894, plaintiff recognized and treated defendant as the owner of

said property, to to-wit, 5th October, 1898, and since then has denied his ownership therein.

"Defendant states that he is the equitable and actual owner of said rooms sued for, and the buildings in which they are, and the lot described in plaintiff's petition and herein.

"Wherefore, defendant prays for an accounting to be had of all plaintiff's collections of rent and payment of debts, in and of said lot and buildings, that a judgment be rendered against plaintiff for defendant for any moneys due him from plaintiff, accruing from said property, that title to said lot be divested out of plaintiff and put into defendant, and for such orders, decrees and judgments as may be just and equitable in the premises."

The reply was as follows:

"Plaintiff for an amended reply to the new matter in defendant's answer, admits that defendant is his son, and that he acquired the real estate therein described from George Ande, and that he mortgaged the same to obtain money to improve said real estate, but he denies each and every other allegation in said answer.

"And, for further reply, plaintiff says that defendant has been guilty of laches in not prosecuting his said alleged claim and should not now be heard as to the matters and things set out in his answer.

"Plaintiff for further reply says that the cause of action in the answer mentioned did not accrue within five years before the filing of said answer, and his alleged claim, if any he has, is now barred by the statute of limitations."

The cause was referred to Arba N. Crane, Esquire, to try all the issues and report his findings to the court. All the evidence was heard, but before the report was filed the death of the plaintiff was suggested and the cause was revived in the name of his executor and legatees and devisees.

On October 7, 1901, the referee filed his report in court, and the plaintiffs within four days filed their exceptions to the same.    On December 18, 1901, the court overruled the exceptions, to which plaintiffs duly excepted, and on December 20, 1901, entered a decree for defendant.   Within four days plaintiffs filed their motion for a new trial, and on January 22, 1902, the court overruled the motion, and plaintiffs excepted.

Sufficient of the evidence will be noted in the opinion to indicate our views on the propositions presented by the record.

I.    The first question which confronts us at the very threshold of this case is whether the trust which defendant by his testimony seeks to enforce is an *express* or a *resulting* trust.    If the latter, there can be no doubt it was permissible to show it by parol evidence, but if the former, our statute imperatively requires it to be "manifested and proved by some writing signed by the party who is or shall be enabled to declare such trust, or by his last will, in writing, or else they shall be void." [Sec. 3416, R. S. 1899; R. S. 1889, sec. 5184.]

On the twenty-second day of September, 1892, George Ande and wife by a general warranty deed bargained and sold to Bonifacius Heil, the original plaintiff in this action, lot 12 in block 12 of the third subdivision in the Lami tract in block 1993, of the city of St. Louis, for and in consideration of $3,286.65, to them recited to have been paid by said Bonifacius Heil.

It is this deed which the defendant says was made at his request to his father, and for which he alone paid the said consideration money, and that his father paid no part of it, and, therefore, he prays to have a decree vesting the same in him and requiring his father to account to him for the rents and profits.

The reason stated in the answer of defendant why

said conveyance was made to his father instead of to himself is that "it was done by defendant only in the belief of defendant that money could be raised on said lot in the name of the plaintiff [his father] better than in his own name, and that plaintiff would aid him with his name and credit to secure the erection of buildings on said lot, and for no fraudulent purpose whatever, said defendant being then a man of some means and wholly free from debt and plaintiff being then a man of large means, to-wit, $15,000."

It is by no means clear from this answer what character of trust defendant desired to allege was created.

In his testimony he goes further and details what occurred at the time he handed the deed to his father. He says: "I told him I had this property deeded to his name in order for him to furnish the money to put up the building and after that building was put up and completed it was to revert back to me." "I asked him to do that for me, get the money—the necessary money —to complete it. It was a hard matter to get that without anybody having property to back it up—the amount that was needed. He said he would gladly do that to help me along, because I had assisted him from boyhood on and he would do the same toward me. So of course, he furnished the money to put up the building and after it was up he simply took the rents for his own purposes and said he would turn· it back when it suited him."

This alleged trust was not evidenced by any kind of writing.

As already said, one of the chief controversies in this case is whether the trust sought to be established by defendant is an *express* or a resulting trust. Our statute (sec. 3416, R. S. 1899), prescribes and requires that "all declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to de-

clare such trust, in writing," and the next section
(3417) expressly exempts from the foregoing section
trusts which may arise or result by implication of law.
So that section 3416 has from the beginning been held
applicable only to express trusts. It has also been con-
sistently and uniformly ruled that it was not neces-
sary that even an express trust must be created by
writing, but it is sufficient that it shall be manifested
and proved by some writing executed by the trustee.
It does not follow, therefore, as defendant seems to
think, that, merely because a trust is not evidenced by
a writing, it necessarily is a resulting trust.

This is clearly a *non-sequitur*. What then is meant
by an express trust, as contradistinguished from a re-
sulting trust? Our statute defines the latter to be one
which arises or results by implication of law, as where
one party pays the consideration or purchase price for
land and the deed is made to a third party, in which
case a resulting trust immediately arises in favor of
the party paying the consideration.

Equity first introduced this principle, that in all
transactions of men concerning land the consideration
is the essential fact which determines the beneficial
ownership, wherever the legal title is vested.

Mr. Pomeroy in his Equity Jurisprudence (2 Ed.),
vol. 2, sec. 987, says: "All possible trusts, whether of
real or personal property, are separated by a principal
line of division into two great classes: Those created
by the intentional act of some party having dominion
over the property, done with a view to the creation of
a trust, which are express trusts; those created by op-
eration of law, where the acts of the parties may have
had no intentional reference to the existence of any
trust—implied, or resulting and constructive trusts."
An express active trust is one in which, from the ex-
press directions of the language creating the trust or
from the very nature of the trust itself, the trustee is
charged with the performance of active and substantial

duties with respect to the control, management and disposition of the trust property for the benefit of the *cestui que trust.*

Perry on Trusts, section 24, defines express trusts as those generally created by instruments that point out directly and expressly the property, persons and. purposes of the trust.

No special form of words is necessary to create an express trust. In a word, then, an express trust is one which defines and limits the uses and purposes to which certain property shall be devoted and defines the duties of the trustee as to its control, management and disposition. With this general understanding, were or were not the uses which defendant attempted by his testimony to show this property was conveyed to his father an express trust, irrespective now of the evidence by which it was manifested and proved?

He testified that he caused the property to be deeded to his father in order for his father to furnish the money to put up a building thereon and after that building was put up and completed, it should revert to defendant. He further says his father was to furnish the necessary funds, as his father had property that was clear and could get the money on the property and take back a deed of trust and put it in defendant's name.

Now, by a process of exclusion, we think it is obvious that no such specific duties as he here imposed on his father and trustee could result by mere implication of law, and hence the alleged trust could not be a resulting trust.

But more than this, the trust is specifically defined and the trustee's duties and obligations carefully prescribed, and the land conveyed to the trustee. We think that the trust to which the defendant deposed and which he sought to establish was an express trust according to all the tests and definitions of such trusts

to be found in the texts of the law-writers and opinions of the courts.

Counsel for respondent concedes that it was not competent to prove an express trust in lands by parol, and we have seen it was not a resulting trust. It can not be transferred into a resulting trust merely for want of legal evidence to enforce it as an express trust.

II.   But even if it were held to be a resulting trust, the evidence falls far short of that clear, cogent and satisfying evidence which would justify a court of equity in enforcing it.   It is true that the testimony shows that defendant actually conducted the negotiations and paid over the money to Ande from whom the lot was purchased, but on the vital proposition as to the ownership of the money that constituted the consideration the defendant's case must rest entirely upon his own evidence.   He testifies that he paid for it out of his own means and a thousand dollars belonging to his wife, whereas, his father and brother testify that the father had loaned him $500 to put in his business to start him, and that his father worked for him about ten years and did not draw his wages at all, not needing it, and that when the lot was purchased, the defendant told his father he could take what he owed him out of the business and pay for the lot, and his father directed him to do so.

The contract for building the house was in writing and in the father's name.   The father mortgaged it and paid for the building.   He paid off that mortgage and placed a second mortgage on it.   The father paid all the taxes on the property.   The father leased all the rooms except those occupied by defendant and collected the rents and this continued for five or six years. All these things were done openly and without protest from defendant.   The father repudiated the trust absolutely.   There is no pretense that the defendant ever paid his father for his long-continued services, and no

explanation is made why his wages should not have been paid except that the father says they were settled by taking them and the money he had advanced his son to start the business and applying both in the purchase of the lot. Following the rule so long and uniformly announced in cases of resulting trusts in this State we are constrained to hold that no such satisfying evidence was produced as would justify this court in divesting a title so long recognized to be in the plaintiff, even if the alleged trust can be said to fall with the class of resulting trusts, which we have already said it does not. It may be that the son has invested his money in this lot, but if he did he should have had his father make a declaration of the trust as the law requires.

The statute can not be ignored to correct the inequities of individual cases. It was to prevent just such litigation as this that it was enacted. In our opinion the circuit court erred in decreeing the title in defendant and in rendering judgment for the defendant for $6,468.04 for rents and interest.

The judgment is reversed and the cause remanded for new trial in accordance with the views herein expressed.

*Fox, J.*, concurs; *Burgess, J.*, absent.