JOHN A. PARKER and THOMAS J. CONDUITTE and LYDA PARKER v.
LENAH L. BLAKELEY, Appellant.—93 S. W. (2d) 981.

Division One, April 23, 1936.

*Ed. S. Jones, Lionel Davis, W. F. Wilkinson* and *W. Raleigh Gough* for appellant.

*Walker Pierce* and *Calvin, Vandeventer & Kimbrell* for respondents.

FERGUSON, C.—This is a suit in equity involving title to 210 acres of land situate in Howard County. The petition is in two counts. In the first count plaintiffs seek the cancellation of two deeds, one from plaintiff Conduitte to defendant and the other from plaintiff Parker to defendant, and pray the court to determine title to the lands. The second count is for partition. The petition states two separate causes of action, one by plaintiff Conduitte and the other by plaintiff Parker. No point was made of this however and the two suits were tried together. On a trial of these suits in the Circuit Court of Howard County the chancellor found against the Conduitte claim and no appeal was taken from the judgment thereon.

In the Parker suit the decree and judgment was for plaintiff, on both counts of the petition, and defendant has appealed therefrom. Therefore only the Parker suit is here and we shall confine ourselves, for the most part, to that portion of the pleadings and evidence relating to that claim. It is conceded that if plaintiff is entitled to recover under the first count of the petition he is entitled to partition under the second count. The appeal then is directed to the court's decree and judgment on the first count.

Plaintiff Parker and defendant Lenah L. Blakeley are brother and sister. Parker is a physician and surgeon with offices in Kansas City, Missouri. He has practiced medicine and surgery since 1902. At the time of the trial, in 1933, he was fifty-seven years of age. The defendant, formerly Lenah L. Parker, married Harold G. Blakeley in 1906, and has since that time resided in Kansas City, Missouri. At the time of and from the marriage in 1906 until his death in 1930, Harold G. Blakeley was engaged in the real estate business in Kansas City. Mrs. Blakeley was a few years older than her brother, Dr. Parker. At the time of the death of Mariah L. Parker, the mother of Dr. Parker and Mrs. Blakeley, on November 5, 1913, she was the owner in fee of the 210 acres of land in Howard County. The mother died intestate and as Dr. Parker and Mrs. Blakeley were her only heirs at law each thereupon became the owner of an undivided one-half interest in the land. On November 8, 1913, three days after his mother's death, Dr. Parker and his wife executed and delivered a warranty deed conveying all of his interest in the 210 acres of land in Howard County to his sister, Lenah L. Blakeley. The deed was filed for record November 11, 1913. Omitting the acknowledgment, which is in conventional form and of the same date, the deed is as follows:

"This Indenture made on the eighth day of November A. D. One Thousand Nine Hundred and Thirteen by and between John A. Parker and Lyda Parker, his wife, of the County of Jackson, State of Missouri, parties of the first part, and Lenah L. Blakeley of the County of Jackson, State of Missouri, party of the second part, Witnesseth:

"Whereas, John A. Parker, grantor, and Lenah L. Blakeley, grantee, are the only children and sole heirs of Mariah L. Parker Hayes, deceased, who departed this life on November 5, 1913, being then the owner of the hereinafter described property, and it being understood by said children that it was the wish of their mother that all her estate, both real and personal, should go to her daughter, Lenah L. Blakeley, the mother having expressed an intention to so provide by will, and the son, John A. Parker, desiring that said property should go according to the expressed wish of his mother, and,

1194

"*Whereas, said John A. Parker is indebted to the estate of his mother;*

"*Now, Therefore, in consideration of the sum of One Dollar ($1.00) to them in hand paid, the receipt of which is hereby acknowledged, and the further consideration of a desire to carry out the expressed wish of their mother, and the further consideration of the release of said John A. Parker from all debts due the estate, and other valuable considerations, the said parties of the first part do by these presents grant and sell, convey and confirm unto the said party of the second part, her heirs and assigns, the following tracts or parcels of land lying, being and situate in the County of Howard and State of Missouri, to-wit:*"

(Here a description of the land is set out.)

"To have and to hold the premises aforesaid with *all and singular the rights, privileges and appurtenances and immunities thereunto belonging or in anywise appertaining unto said party of the second part, and unto her heirs and assigns forever.*" etc. (Italics ours.)

On November 25, 1932, nineteen years after the execution and delivery of the deed, Dr. Parker commenced this suit praying the court "to set aside, cancel and annul" the deed and determine title to the real estate described therein. The ground of plaintiff's claim is stated in his bill or petition as follows:

"That on or about November 8, 1913, the plaintiffs, John A. Parker and Lyda Parker, his wife, made, executed and delivered to the defendant, Lenah L. Blakeley their certain warranty deed, purporting to convey to her, said Lenah L. Blakeley, all of their right, title, interest and estate of, in and to the aforesaid realty, free and clear of any and all liens and encumbrances, which said deed was thereafter, on November 11, 1913, duly filed for record . . . in the office of the Recorder of Deeds of Howard County, Missouri.

"That, although said deed . . . was, and is, upon its face, an absolute conveyance of the aforesaid realty, the same was, however, conveyed to the grantee therein, the defendant herein, in trust, without any consideration therefor moving to the grantors therein, and with the express understanding and agreement between said grantors and said grantee that said grantee should, and would, hold the title thereto in trust for said grantors until the same could, agreeably to all persons interested therein, be sold, or otherwise disposed of, at which time she would promptly account to said grantors for their just portion or share of the proceeds which might be received from the sale or disposition thereof; and, by reason of the premises, an implied or resulting trust arose and was created in favor of the plaintiffs, John A. Parker and Lyda Parker, to the full extent of their interest and ownership in the aforesaid realty."

The answer denies generally, the allegations of the bill and alleges, that the warranty deed executed by plaintiff was an absolute con-

veyance and not in trust, that defendant is the sole owner of the legal and equitable title, and pleads laches and estoppel.

The evidence is brief and somewhat vague. Surmise, conjecture and inference are largely relied upon. At the time of his mother's death Dr. Parker was thirty-eight years of age. He had been practicing his profession successfully, so far as appears, for eleven years. As stated Mrs. Blakeley was some few years older than Dr. Parker and had at that time been married for seven years. Dr. Parker testified that the day his mother died Mrs. Blakeley said: "John (Dr. Parker) I wish you would give me a deed to the Howard County property, as you are not competent from a business standpoint to handle business affairs inasmuch as you are devoting your time to your profession and do not have business judgment as Mr. Blakeley has;" that on the next day he and his wife executed the deed, which is set out supra, and delivered same to his sister, Mrs. Blakeley; that after the execution of the deed Mrs. Blakeley said: "John, when the sale of this property is made I will give you your interest in it;" and that "in the summer of 1915 Mrs. Blakeley came to me and said she had a buyer for the Howard County property and asked me to advise Uncle (plaintiff Conduitte) to make her a deed. . . . I took the matter up with Uncle. I reported to her that Uncle refused to sign a deed for her." The land was not sold and title thereto remained vested in defendant. The "uncle" referred to is plaintiff Conduitte who was a brother of the mother of Dr. Parker and Mrs. Blakeley. It appears from that portion of the petition herein setting forth the Conduitte suit that he claimed to be the owner in fee of an undivided two-thirds interest in this land. It appears that at his death, intestate, in 1860 Thomas J. Conduitte, Sr., was the owner in fee of the land; that he left surviving him, as his sole heirs at law, the plaintiff Thomas J. Conduitte, Jr., Mariah L. Parker (mother of Dr. Parker and Mrs. Blakeley), and Mrs. Mary J. Hambaugh; that in 1869, Mrs. Hambaugh conveyed all her title and interest in the land (an undivided one-third) to plaintiff Thomas J. Conduitte; and that in 1909, plaintiff Thomas J. Conduitte, Jr., conveyed his interest in the land to Mrs. Parker, the mother of Dr. Parker and Mrs. Blakeley. Nevertheless plaintiff Conduitte claimed in his suit herein that he was the owner in fee of an undivided two-thirds interest in the land in which plaintiff Parker, in the joint or common petition, seems to acquiesce. The first paragraph of the petition alleges: "That the plaintiff, John A. Parker and the defendant Lenah L. Blakeley, are brother and sister, and were, and are, the sole heirs of Mariah L. Parker, deceased, . . . who, at the time of her death, was the record owner, as well as the legal and equitable owner, of an undivided one-third interest" in the lands in controversy. In the petition plaintiff Park-

er claimed to be the owner of only an undivided one-sixth interest in the land, adopting and approving the Conduitte claim to an undivided two-thirds interest therein. So far as the record before us discloses Conduitte did not have a semblance of title and the court dismissed his suit, stating, in a memoranda decision: "It is conceded that under the evidence produced the claim of the plaintiff, Thomas J. Conduitte is untenable." Whereupon plaintiff Parker then took the position that at the death of his mother he became the owner of an undivided one-half interest in the land which defendant readily concedes.

Plaintiff Parker alleges in his bill, set out supra, that though, on November 8, 1913, he "executed and delivered" to Mrs. Blakeley "a warranty deed, which is, upon its face, an absolute conveyance" to her of all his right, title and interest in the land, that nevertheless the land was "conveyed . . . in trust, without any consideration therefor moving to the grantors" and upon or "with the express understanding and agreement between" him and Mrs. Blakeley that she "would hold the title thereto in trust for" him "until" the land "could agreeably to all persons interested therein, be sold, or otherwise disposed of, at which time she would promptly account" to him for his "just portion or share of the proceeds which might be received from the sale or disposition thereof" and that by reason "of the premises," that is by reason of the "express understanding and agreement" between him and Mrs. Blakeley, "an implied or resulting trust arose and was created" in his favor to the extent of his interest in the land derived by inheritance from his mother. The testimony of Dr. Parker, set out supra, as to a parol agreement between him and his sister at the time he executed the warranty deed is all, and the sum of, the evidence as to the "express understanding and agreement." No other witness testified to the conversation. Therefore the "express understanding and agreement" relied upon is that stated in the above testimony of Dr. Parker, an alleged conversation with his sister, and arises wholly out of parol. Mrs. Blakeley testified that she "took possession and charge" of the land in August, 1913, before her mother's death; that it was her mother's expressed desire and intention, "verbal will," that she should have the land (as recited in Parker's deed to her); that since she first took charge of the land in 1913 she had exercised exclusive control over it and had the "undisputed possession" thereof through tenants; that she had personally paid all taxes thereon; that she had collected and retained the rents and had "always had to take the rent in crops;" and that she had never, at any time, promised or agreed with her brother to hold the title to an undivided one-half interest, in trust, for him or to sell the land and account to him for any part of the proceeds. The only mention of a sale of the land

after the purported conversation following the execution of the deed in 1913, as testified to by Dr. Parker, was that, "in the middle of the summer of 1915" Mrs. Blakeley "said she had a buyer" and asked him to "advise" their uncle (Conduitte) "to make her a deed;" that he took the "matter up with the uncle" but he refused to make a deed. It is not claimed that she otherwise discussed the possible sale of the land with Dr. Parker, the terms, the price or the advisability thereof as might ordinarily be done had the matter of sale been discussed between two cotenants. Rather it seems the most that occurred was that Mrs. Blakeley knowing of her uncle's claim that he was the owner of an undivided two-thirds interest in the land (the basis of the claim is not clear on the record before us but apparently it was without merit) sought merely her brother's aid in obtaining a quitclaim deed from the uncle to her with a view to clearing away any claims against her title. It does not appear, except by far-fetched inference, that during the whole period of nineteen years intervening between the execution of the deed and the commencement of this suit that Mrs. Blakeley ever made an accounting to Dr. Parker as to the management or proceeds of the land involved or that he demanded such an accounting. Nor does it appear that Dr. Parker ever asserted any claim of title to the land or that Mrs. Blakeley held title to an undivided one-half interest in trust for him, or demanded a reconveyance of that interest until about 1930, or seventeen years after the execution of his warranty deed to her. There are indications in the evidence that about that time some misunderstanding or disagreement arose between them.

Reference is made in the testimony of Dr. Parker and the witnesses in his behalf to land in Macon County, Missouri, and in Wyandotte County, Kansas. The purpose of this testimony, admitted over defendant's objection, is not entirely clear. The testimony is so indefinite and vague that it is difficult to determine the situation, if pertinent, in reference to the lands in Macon County, Missouri, and Wyandotte County, Kansas. At most it touches but remotely upon the determinative issues involved. It appears that Dr. Parker and Mrs. Blakeley had owned some land, referred to by one witness as being 900 acres, in Macon County, Missouri, as tenants in common. It is not anywhere definitely disclosed how or when they acquired this land nor how the title was held. It may perhaps be inferred that some of the Macon County land was owned by their mother at the time of her death and that they acquired title thereto by inheritance. Assuming or inferring that at least some of the Macon County land was so acquired there is no showing that Dr. Parker ever conveyed his interest therein to defendant. There is a reference in the evidence indicating that part of the Macon County land was jointly purchased by Dr. Parker and Mrs. Blakeley but

it does not definitely appear how the title thereto was held. It was admitted throughout, and never, so far as appears, at any time questioned, that Dr. Parker purchased and was the beneficial owner of the Wyandotte County, Kansas, lands. However, and apparently in furtherance of his own purposes, Dr. Parker caused the title to the Kansas land to be vested in Mrs. Blakeley. The date of the purchase of the Kansas land by Dr. Parker does not appear. There is no showing that prior to the execution of the warranty deed to the Howard County lands, in November, 1913, Dr. Parker owned the Kansas land, with Mrs. Blakeley holding title thereto for him, or that they owned any of the Macon County land or any other property jointly or that any business relationship of any kind existed between them. In the summer of 1931, Dr. Parker brought suit for partition of the Macon County land, which was uncontested. A decree of partition was entered and the lands sold. Prior thereto, and at the request of Dr. Parker, Mrs. Blakeley conveyed the Kansas lands to him or his nominee. Apparently Mrs. Blakeley never at any time claimed, as between Dr. Parker and herself, to have any beneficial interest in the Kansas lands nor does it appear that she ever asserted any claim in the Macon County lands other than to be the owner of an undivided one-half interest. A Dr. Pierce as a witness for plaintiff testified that he had known Dr. Parker and Mrs. Blakeley "all my life;" that he had heard "two or three conversations" between them at Dr. Parker's office where "they were discussing their holdings;" that on one occasion in 1928 "they were talking about taxes in Macon County and Dr. Parker said, 'we have also got to take care of taxes in Howard County;'" that he heard a conversation in which they "were talking about selling some cows" and that "the stock they were talking about selling" w at Dr. Parker's farm in Wyandotte County, Kansas. Plaintiff's witness Guy E. Hall stated that he "looked after the leasing of the Macon County lands and took care of the crops for ten or twelve years;" that in the summer of 1931, after Dr. Parker commenced suit for partition of the Macon County lands he went to Kansas City and went with Mrs. Blakeley, at her request, to Dr. Parker's office; that the purpose of the call "was to try to make some kind of settlement of that suit;" that there was "some personal indebtedness" in settlement of which Dr. Parker "paid Mrs. Blakeley six or eight hundred dollars and also gave her some notes" and "a conclusion was reached as to the settlement of the" partition suit; that "nothing was said about the Howard County land." Plaintiff called as a witness Edna Forsythe who stated that she was "formerly the wife of Dr. Parker;" that in April, 1932, she went to Mrs. Blakeley, "at the instance of Dr. Parker," and asked Mrs. Blakeley "if she would give Dr. Parker his part of the Howard County farm" and that Mrs. Blakeley said, "it was better for the land to

stay in her name." This witness testified to another purported conversation, which by reference she fixes at some time after 1930, in which Mrs. Blakeley told her "all Dr. Parker had to do was to ask for the land (presumably referring to the land in Howard County) and she would give it to him." One of plaintiff's attorneys testified that in the summer of 1931 he "told Mrs. Blakeley," that as attorney for Dr. Parker he "was seeking to obtain from her proper deeds of conveyance for the Macon County land also the land in Howard County" and that Mrs. Blakeley said.: "Why doesn't he come to me himself. He can have them if he will come to me." Mrs. Blakeley denied that she ever offered to make a deed to Dr. Parker conveying an interest in the Howard County land and said that she merely expressed a willingness to. make any necessary deeds for division of the Macon County lands or to convey title to the Kansas lands to Dr. Parker.

The decree was for plaintiff on both counts. The chancellor's finding is, that Mrs. Blakeley "agreed with" Dr. Parker "to hold the title to his interest and estate for him until the same could, or would, be sold, in which event she agreed to turn over, and deliver, to him his proportionate share of the proceeds of such sale; and the court further finds that by reason of the premises (that is, the agreement) a resulting trust in the above described real estate was created in favor of the plaintiff, John A. Parker, to the extent .of an undivided one-half interest and estate therein."

Our statute of Uses and Trusts (Sec. 3104, R. S. 1929) requires, that "all declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts, or by his last will, in writing, or else they shall be void. . . ." We have in this instance the conveyance of an interest in land by an absolute and unconditional warranty deed expressing a valuable consideration and containing positive recitals refuting any concept of a trust. But plaintiff pleads that the conveyance was made pursuant to and "with the express understanding and agreement between the grantor and grantee that said grantee should, and would, hold the title" to the land "in trust for the grantor until" the land was "sold, or otherwise disposed of, at which time" the grantee would account to the grantor for his "share of the proceeds" of the sale. The bill does not allege that the conveyance was induced or procured by fraud on the part of the grantee; not even a remote intimation of fraud is to be found therein. The bill declares an express trust and the plaintiff's testimony, the whole of the evidence relating to the "express understanding and agreement" creating the alleged trust, is that it was in parol. The trial court's finding was that by reason of the

parol agreement a trust, in favor of plaintiff, was created in the land. It is true the decree denominates the trust it declares as "a resulting trust" but that in nowise modifies or alters the fact that the court specifically found that the trust was created by the parol agreement. But under the statute, supra, a valid and enforceable trust in lands cannot be created by a parol agreement. Seemingly the case comes within the statute and the clear pronouncement of numerous decisions of this court. In Price v. Kane, 112 Mo. 412, 20 S. W. 609, the wife "wanted her husband to deed her" certain real property and promised "that, when he wanted it back, she would give it to him," whereupon the husband made the conveyance. Admissions by the wife that "she was holding the property in trust for John Kane, her husband, and was ready at any time to convey it to him" were shown. The deed was absolute, without reservation of any kind therein. Fraud was not alleged nor shown whereby a constructive trust might arise. It was said "plaintiff relied wholly upon the promise of his wife to reinvest him with title." It was held that the statute applied. And in Rogers v. Ramey, 137 Mo. 598, 39 S. W. 66, it was held that, in the absence of fraud or mistake, the estate conveyed by a warranty deed when not intended as a mortgage (as to which the cases make a distinction) cannot be controlled, limited or enlarged by a mere verbal agreement between the parties thereto and parol evidence is not permissible for that purpose. In Hillman v. Allen, 145 Mo. 638, 47 S. W. 509, the court pointed out that plaintiff's case rested upon "the plain allegation that the father conveyed the real estate by deed absolute to his son, without qualification or limitation of any kind in the deed, and contemporaneously imposed upon the son the express parol trust to sell the lot as trustee for his father, pay off liens, and refund the balance." It was held that the parol trust was void. In Bartlett v. Tinsley, 175 Mo. 319, 75 S. W. 143, this court reiterated the rule that a deed absolute on its face will defeat a parol trust or reservation in the grantor's favor and see, also, Heil v. Heil, 184 Mo. 665, 84 S. W. 45. The following excerpt from Crawley v. Crafton, 193 Mo. 421, 91 S. W. 1027, relates to an analogous situation; "the whole claim that Mrs. J. A. Crafton held the lands in trust is based upon the alleged (parol) agreement between her and her husband at the time of the conveyance, that she would take the title for his protection, would hold it for the benefit of him and all of his heirs, and whenever desired by him would reconvey to him. This is the sum and substance of the trust set up in the petition, and is, of course, an express trust, which under the statute is void unless manifested in writing as therein required." [See, also, Bender v. Bender, 281 Mo. 473, 220 S. W. 929, and Ebert v. Meyers, 320 Mo. 804, 9 S. W. (2d) 1066.] In the Ebert case it was

held that where an agreement is relied upon to establish a trust, it is an express trust and is void unless in writing. Plaintiff's bill herein alleges, his evidence shows, and the court's decree is based upon, a trust in lands created by a parol agreement between the parties contemporaneous with the conveyance of the lands to defendant by a warranty deed absolute on its face, without qualification or limitation. Clearly, under the statute, such a trust is void. Therefore the purported admissions of Mrs. Blakeley many years subsequent to the conveyance indicating, as plaintiff claims, that she recognized that she held title to an undivided interest merely as trustee for Dr. Parker and as tending to corroborate his testimony of a parol agreement creating such a trust does not aid plaintiff for however convincing the proof of such a trust may be a court of equity cannot enforce a mere parol trust in the face of the statute declaring it void.

But plaintiff advances the contention that upon the conveyance of the land to defendant an implied trust arose in his favor, that is, a trust arose by operation or implication of law and not by virtue of the parol agreement. While express trusts of lands must be "manifested and proved by some writing" pursuant to Section 3104, supra, of the Statute of Uses and Trusts, trusts which result or arise by implication of law are not affected by the statute and may be established by parol evidence Section 3105, Revised Statutes 1929; Price v. Kane, supra; Heil v. Heil, supra; Norton v. Norton (Mo.), 43 S. W. (2d) 1024. However the rule is well settled that to establish an implied trust "an extraordinary degree of proof is required;" a preponderance is not sufficient but the evidence must be so clear, cogent, positive and convincing "as to exclude every reasonable doubt from the chancellor's mind." Norton v. Norton (Mo.), 43 S. W. (2d) 1024, 1032, and cases there cited. In considering plaintiff's claim of an implied trust it may also be helpful to keep in mind that an implied trust results or arises by operation of law from the facts of the transaction, not from an agreement, and that it results or arises, if at all, "at the instant the deed is taken." It must result or arise from facts which occur "at the time of or anterior to" the execution of the conveyance by which the title passes and "cannot be created by subsequent occurrences." [Bender v. Bender, 281 Mo. 473, 477, 220 S. W. 929, 930; Richardson v. Champion, 143 Mo. 538, 544, 45 S. W. 280, 281; Gates Hotel Co. v. C. R. H. Davis Real Estate Co., 331 Mo. 94, 52 S. W. (2d) 1011; Ebert v. Meyers, 320 Mo. 804, 9 S. W. (2d) 1066.] Courts have been disposed to recognize two classes of implied trusts designating them as "resulting trusts" and "constructive trusts." A resulting trust is based upon the presumed intention of the parties and "arises where, and only where, such may be reasonably

presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which it is sought to be established.'' [65 C. J., p. 366.] This doctrine of course has no application to an express agreement for a trust of lands which, as we have heretofore pointed out, would be an express trust and if not ''manifested and proved by some writing,'' as required by the statute, would be void. A parol agreement for a trust of lands is not ''transferred into a resulting trust merely for want of legal evidence to enforce it as an express trust.'' [Heil v. Heil, supra.] The other class of implied trusts, ''constructive trusts,'' are said ''to rest upon the sound public policy'' which requires that the law should not become the instrument of designing persons to be used for the purpose of fraud. ''Dishonesty and deceit are not necessary ingredients'' of a resulting trust but fraud is an essential element of constructive trust. [Ferguson v. Robinson, 258 Mo. 113, 167 S. W. 447; Bryan v. McCaskill, 284 Mo. 583, 225 S. W. 682; 65 C. J. 454.]

■ We first examine plaintiff's theory of a resulting trust. In Sanford v. Van Pelt, 314 Mo. 175, 204, 282 S. W. 1022, 1031, it is said: ''Resulting trusts in lands are of two general types: (1) Those where a purchase has been made and the legal estate is conveyed or transferred to one party, but the purchase price is paid by another party; and (2) those where there is a gift by deed or will to a donee or grantee without pecuniary consideration coming from the grantee, but the intention appears, from the instrument itself, that the legal and beneficial estates are to be separated and that the grantee or donee is either to enjoy no beneficial interest or only a part of it. [Pomeroy's Eq. Juris. (3 Ed.), sec. 1031.''] Clearly the trust here claimed does not fall in the first mentioned class, which is the general and most common type of a resulting trust. Nor does it come within the second class mentioned for the reason that it does not appear ''from the instrument itself,'' as in the Sanford v. Van Pelt case, that the grantee was not ''to enjoy the beneficial interest'' or was to enjoy only a part of it. On the contrary the recitals, and the whole purport, of the deed evidence an intention that the grantee take absolutely and not in trust. Plaintiff invokes a type of resulting trust defined in 65 Corpus Juris, at page 379, as follows: ''As a general rule, where a conveyance of property is made without, or upon a failure of, a valuable consideration therefor, express or implied, and it is not intended as a gift, a resulting trust is presumed to arise in favor of the grantor; . . . While the absence of a consideration is essential, the mere want of consideration does not of itself operate to create a resulting trust for the benefit of the grantor in a deed against his grantee . . . but there must be in connection circumstances evidencing that the gran-

tee was not intended to take beneficially." As thus defined two conditions must exist: (1) that the conveyance is without a "valuable consideration;" and (2) that the circumstances in connection with or surrounding the conveyance evidence an intention that the grantee was not to take beneficially. We have set out, supra, the recitals of the deed relating both to the intention and purpose of the grantor in making same and the consideration. Plaintiff apparently concedes (at least he does not contend otherwise) that the deed recites a valuable consideration. The general rule, approved by the courts of this State, is that: "In the absence of fraud or mistake, a resulting trust will not arise in favor of the grantor although a valuable consideration is not in fact paid, where a contrary declaration is made by the grantor at the time of the conveyance, as where the conveyance recites a valuable consideration as paid by the grantee, even though it be only nominal, particularly where the conveyance is absolute in form and the *habendum* clause declares the beneficial use or interest in the property to be in the grantee or some third person." [65 C. J., p. 380; Weiss v. Heitkamp, 127 Mo. 23, 29 S. W. 709; Rogers v. Ramey, supra; Chambers v. Chambers, 227 Mo. 262, 127 S. W. 86; Clark v. Skinner, 334 Mo. 1190, 70 S. W. (2d) 1094.] We have pointed out that neither fraud nor mistake is alleged. If, however, the transaction was tainted with fraud the trust, if any, arising therefrom would be a constructive trust which we shall later discuss. Nor is the other essential condition of the type of resulting trust under consideration present, that is, that the circumstances at the time attending and surrounding the conveyance evidence an intention that the grantee was not to take beneficially. We have pointed out that the trust must result or arise, if at all, from circumstances or conditions existing at the very time of the conveyance. If the references to other lands be looked to as a basis for some sort of an inference as to the intention of the parties in this conveyance it suffices to say that the evidence of that character is so vague and indefinite that it falls short of the quality of proof required in this kind of a case. It does not appear that at the time this deed was made Mrs. Blakeley was holding title to the Kansas land for Dr. Parker and certainly that part of the Macon County land which they jointly purchased, though it does not appear how the title was held, was acquired after this conveyance. There is nothing in the references to other lands, or the other evidence, tending to show any sort of prior dealing between them in reference to land or any other prior or then existing business relationship. It is true the parties were brother and sister but that fact alone does not afford sufficient evidence to warrant an inference, or imply an intent, contrary to the specific recitals of the deed, that the conveyance was made in trust. The only

1204

"circumstance" tending to show an intention that defendant was not to take a beneficial interest is the parol agreement but that constitutes, as we have pointed out, a parol express trust and is void under the statute. We do not find the conditions or circumstances existing at the time the conveyance was made to be such as give rise to a resulting trust.

Plaintiff next cites and relies upon a pronouncement of Division One of this court found in O'Day v. Annex Realty Co., 191 S. W. 41, not reported in the official reports. In that case fraud was pleaded and the opinion sets out facts showing actual fraud. The opinion then holds that; "a constructive trust arose in favor of plaintiff by implication of law;" "the parol agreement . . . is not within the Statute of Frauds;" and "plaintiffs are entitled to a decree establishing the trust." Having thus determined the case on the ground of fraud giving rise to a constructive trust the opinion then adds this statement or pronouncement, upon which plaintiff here relies: "Where a grantee takes possession of real estate under a deed, absolute in its terms, under a parol agreement, whereby he undertakes to hold the property for some legitimate purpose, or to sell and account for the proceeds, or to reconvey it to the grantor, his refusal to perform his promise amounts to a constructive fraud, and he will be held to be a trustee for the grantor or his heirs. [McLure v. Bank of Commerce, 252 Mo. 510, 160 S. W. 1005; Brightwell v. McAfee, 249 Mo. 562, 155 S. W. 820; Phillips v. Jackson, 240 Mo. 1. c. 335, 144 S. W. 112, and cases cited; Witte v. Storm, 236 Mo. 470, 139 S. W. 384.]" If that be recognized as a correct statement of applicable law then in any case where the lands are conveyed by a deed "absolute in its terms" but it is alleged that a parol trust was imposed by a contemporaneous oral agreement then the mere subsequent violation of, or refusal of the grantee to perform, the alleged parol agreement would be the basis for a constructive trust in the lands in the grantor's favor. Such holding renders the statute governing express trusts in lands ineffectual. The Missouri cases cited do not support the statement as made. The McLure and Brightwell cases are suits to have a deed absolute on its face declared a mortgage; the Phillips case involves an "equitable mortgage," fraud and a constructive trust. In Brightwell v. McAfee, it is said, parol evidence "is admitted by courts in almost all jurisdictions to prove that a deed absolute on its face is a mortgage, the grounds therefor being variously stated." It is observed in the annotation at page 162, L. R. A. 1916B: "That a conveyance in trust is fundamentally dissimilar from a conveyance by way of mortgage is apparent from two considerations. The essence of the former is a 'confidence' reposed in the grantee with respect to the property in question, while the latter . . . operates merely so as to subject the property to a lien. Again the

former 'is an absolute and indefeasible conveyance of the subject-matter thereof for the purpose expressed; whereas the latter is conditional and defeasible.' In either of these two points of view it is clear that the ultimate issue to which the evidence is directed in a case which a trust is alleged is entirely different from that which is presented in a case in which the theory of an intention to create a mortgage is relied upon. The distinction between the two classes of transactions has been . . . the ratio *decidendi* . . . in cases in which it has been held that enactments which provide that express trusts in respect of real property shall be authenticated by writing do not preclude the introduction of parol evidence for the purpose of showing that an instrument which purports to convey property of that description absolutely was intended to operate as a mortgage,'' and ''in cases which have proceeded upon the ground that the rule under which evidence is treated as being admissible for the purpose of converting an absolute conveyance into a mortgage 'affords no ground for saying that a parol trust can be upheld' in respect of property that falls within the scope of such provisions.'' The Witte case involves the principle that an agent is prohibited from acquiring, to the prejudice of his principal, directly or indirectly, any interest in property which is the subject matter of the agency. The pronouncement, supra, in the O'Day case is in conflict with the ruling of this court in Ferguson v. Robinson, supra, where it was said: ''Equity does not pretend to enforce verbal agreements in the face of the Statute of Frauds, and the person holding the legal title to real estate will not be decreed to be a constructive trustee, unless there is something more in the transaction than the mere violation of a parol agreement. Accordingly, the mere refusal of a trustee to execute an express trust, or the denial of the existence of the trust by him does not make a case for raising a constructive trust.'' It is further said in that case that, the ''simple violation of a parol contract'' does not give rise to a constructive trust ''for if such was the law, the Statute of Frauds would be virtually repealed.'' This statement in the Ferguson case was cited and approved in the more recent cases of Long v. Conrad (Mo.), 42 S. W. (2d) 357, and Gates Hotel Company v. C. R. H. Davis Real Estate Co., supra. In the Gates Hotel Company case it was held that ''to authorize a recovery in cases of this character, the plaintiff must show something more than the mere violation of a parol agreement. The breach of a void contract does not give a right of action.'' It is not to be understood that the correctness of the result or the basis of the real finding made in the O'Day case is questioned. The case was noted in Young v. Kansas City Life Insurance Co., 329 Mo. 130, 136, 43 S. W. (2d) 1046, 1048, and the court there observed, that it ''is a case where

there was actual fraud." We have perhaps dwelt at too great length upon the pronouncement in the O'Day case. It might be dismissed as surplusage or dictum but we deem it advisable to point out that it does not accurately state the prevailing rule in this jurisdiction. The instant case, under plaintiff's evidence, is then seemingly resolved to this, that the land was conveyed to defendant by a warranty deed absolute on its face; but that contemporaneously therewith an express parol agreement was entered into between the parties that defendant should take and hold title to an undivided one-half interest, in trust, for the purpose of selling the land and making division of the proceeds thereof with plaintiff according to his proportionate share therein; and that thereafter defendant refused to perform the agreement and denied the existence of the trust. In such a situation equity cannot establish and enforce a trust contrary to the statute.

But plaintiff here urges that a constructive trust in his favor arose. It will be remembered that fraud is not alleged and the trial chancellor made no finding of fraud in connection with the transaction. "Nothing is better settled than that, where a trust of this kind (a constructive trust) is sought to be enforced, fraud must be distinctly alleged and clearly proved." [Ferguson v. Robinson, supra.] However that plaintiff may be allowed the fullest consideration of his claim and treating the case as if fraud were alleged we examine the theory of a constructive trust. Recalling the kind, quality and degree of proof required to establish an implied trust and looking to the evidence herein as to the conditions, facts and circumstances existing prior to and at the very time of the conveyance does the evidence tend to show that the conveyance was induced or obtained by fraudulent means, that is, by any artifice, deception, undue influence, duress, coercion, false representations or fraudulent conduct on the part of the grantee? We have noted that "neither the mere making of the verbal agreement nor the bare violation thereof would amount to fraud. Otherwise the Statute of Uses and Trusts and the Statute of Frauds would serve no purpose." [Gates Hotel Co. v. Davis Real Estate Company, supra.] "In order that the doctrine of trusts ex maleficio with respect to land may be enforced . . . there must be something more than a mere verbal promise, however unequivocal, otherwise the Statute of Frauds would be virtually abrogated; there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated." [Pomeroy's Equity Jurisprudence (4 Ed.), sec. 1056, p. 2412; Leahey v. Witte, 123 Mo. 207, 220, 27 S. W. 402, 406.] We have also heretofore noted that the evidence does not show the existence of any business or fiduciary relationship between the parties either

prior to or at the time of the conveyance. The mere relationship of brother and sister is not in itself a fiduciary relationship. [35 A. L. R., p. 319.] As the time of the conveyance Dr. Parker was thirty-eight years of age, a member of the medical profession, had practiced his profession, apparently with success, for eleven years. We find no sufficient evidence tending to show, or warranting the inference of, undue influence, duress or coercion. It is not claimed that Mrs. Blakeley represented that any negotiations for an immediate sale of the land were then pending or that a sale could be made in the immediate future and that it was necessary that the title be vested in her in order to promptly and advantageously effect such sale or that she made any false representations of any kind. The only evidence which plaintiff can look·to as tending to show the alleged oral promise to hold title for the purpose of a sale was fraudulently made is that Mrs. Blakeley did not make a sale, that is, she did not comply with the agreement but as we have observed that alone does not amount to fraud. The most that plaintiff claims is that Mrs. Blakeley suggested that he make the conveyance, whereupon he voluntarily did so, and that after the execution of the deed she said, "when a sale of the property is made I will give you your interest in it." It must be assumed that Dr. Parker understandingly executed the warranty deed containing specific and unequivocal recitals which negative any inference of a trust. The deed absolute on its face conveys, for an expressed valuable consideration, the legal and beneficial estate. If as he claims there was a parol agreement between him and his sister that she should take title in trust, contradictory to and in contravention of the terms of the deed, it is as reasonable an inference that he sought by the transaction to conceal his interest in and ownership of the land as that she by some fraudulent means induced him to convey by a deed such as we have in this case. We discover no sufficient evidence of fraud to warrant a constructive trust.

Equity cannot, in the face of the statute, enforce the alleged express parol trust and as we find that no implied trust resulted or arose upon the making of the conveyance, it follows, that plaintiff was not entitled to a decree and judgment on either count of the petition. Therefore the judgment on both counts must be reversed with directions to the circuit court to dismiss plaintiff's petition. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.